PONCE CANDY INDUSTRIES, Petitioner, *v.* DISTRICT COURT OF PONCE, HON. A. FIOL NEGRÓN, JUDGE, Respondent; MONSERRATE SILVA, Intervener.

No. 1747.   Argued May 5, 1948.—Decided December 7, 1948.

388

*Leopoldo Tormes García* for petitioner. *Ramón Cancio, Pedro Santana,* and *Joaquín Gallart Mendía,* counsel for the Department of Labor, for intervener, plaintiff in the main action.

MR. JUSTICE TODD, JR., delivered the opinion of the Court.

We issued the writ in this case to review the judgment rendered by the District Court of Ponce ordering the petitioner, Ponce Candy Industry, to pay to Monserrate Silva, an employee of petitioner, the amount of $38.40 equivalent to half pay for four weeks before and four weeks after childbirth on the ground that she is a working mother contemplated by Act No. 3 of March 13, 1942, to protect working mothers, etc., as amended by Act No. 398 of May 13, 1947.

The facts in this case are not in controversy. Monserrate Silva a married woman but not living with her husband, has been working as a laborer for petitioner for more than two years at a weekly salary of $9.60; she became pregnant as a result of marital relations with another workman of the petitioner. When the time for childbirth neared she in-

formed petitioner of her pregnancy and presented the proper medical certificate on February, 1947; four months after the birth she returned to work for petitioner and claimed payment of one-half her salary for the four weeks before and after childbirth. Petitioner refused to pay and she filed the present action in the municipal court under Act No. 10 of 1917.

Sections 1 and 2 of Act No. 3 of 1942 *supra* provide as follows:

"Section 1.—*Statement of Motives.*—The legislation in force in Puerto Rico provides no protection whatever for working mothers. In collective and individual labor agreements it is not customary to include any provision to guarantee any period of rest for working mothers in the weeks that precede or follow the birth. Uninterrupted work during this period constitutes a positive danger to the health and life of the workers. Medical science counsels the observance of a period of rest in these cases. Modern labor legislation is oriented towards providing working mothers with this indispensable rest. The Puerto Rican Women who work in offices, commercial and industrial establishments, and public-service enterprises need the benefits of this humanitarian measure which is indispensable for the protection of their health and the preservation of their lives. It is hereby declared that the public policy of this Act is, through the exercise of the powers of the Legislature of Puerto Rico to enact laws for the protection of the lives, health, and security of employees and workmen, to establish the right of working mothers to a rest which shall include four weeks before and four weeks after the birth."

"Section 2.—(Amended by Act No. 398 of 1947, Session Laws, page 768).—During pregnancy, working women shall be entitled to a rest which shall include four weeks before and four weeks after the birth.

"During this period the work of women workers in an advance stage of pregnancy shall be prohibited in offices, commercial and industrial establishments, and public utilities.

"The employer shall likewise be under obligation to pay to the working mother during the said period of rest one-half of the salary, wages, day wages, or compensation that she may

be receiving for her work. This payment shall be made in the same manner and on the terms established for the payment of the regular salaries, wages, day wages or compensation; *Provided,* That the average of the salary, wages, day wages, or compensation that she may have received during the three (3) months immediately preceding the beginning of the period of rest shall be taken as the sole basis for computing one-half of the salary, wages, day wages, or compensation.

"If the birth takes place after the four weeks following the date on which the working woman has begun to enjoy her rest, or if it is followed by any disease caused directly by the birth, and which prevents her from working for a period of more than four weeks, counting from the date of the birth, the employer shall be obliged to extend the period of rest for a period which shall not exceed four additional weeks, if, before the period of rest expires, a medical certificate accrediting such facts is presented·to him. In this case the working woman shall have no additional compensation but her employment shall be kept open for her."

Petitioner alleges that this Act is unconstitutional because it deprives petitioner of its property without due process of law by compelling it to pay to the working mother a salary without her having performed any work during eight weeks and that it infringes § 2 of the Organic Act, the first paragraph of which provides "That no law shall be enacted in Porto Rico which shall deprive any person of life, liberty, or property without due process of law, or deny to any person therein the equal protection of the laws."

Insofar as the facts in this case are concerned, we believe that the provision copied should be construed together with paragraph ten of the same § 2 of the Organic Act which provides that "Nothing contained in this Act shall be construed to limit the power of the Legislature to enact laws for the protection of the lives, health, or safety of employees."

This provision of our Organic Act is a full recognition on the part of Congress as to the authority of our Legislature to enact laws under its police power to protect the lives,

health, and safety of the employees and workmen. See *J. B. Nieva & Co.* v. *Domenech, Treas.*, 46 P.R.R. 153, 155.

It has been settled that legislation providing for minimum wages and maximum hours of work does not violate the due process clause. *West Coast Hotel Co.* v. *Parrish et al.*, 300 U.S. 379; *United States* v. *Darby*, 312 U.S. 100. To that end the validity of legislation authorizing a day of rest each week without pay to workmen has been upheld under the police power for public health and welfare. *People* v. *C. Klinck Packing Co.*, 108 N.E. 278 (N. Y., 1915); Ann. Cas. 1916 D. 1058; L.R.A. 1915 F. 831; *Compañía Popular de Transporte* v. *Unión de Empleados de Transporte, et al.*, ante, p. 167; See *Hennington* v. *Georgia*, 163 U.S. 299.

Recently we upheld the validity of Mandatory Decree No. 12 issued by the Minimum Wage Board. It fixed the minimum wages, the maximum period of labor and the conditions of work for the employees of the transportation service in Puerto Rico. *American Railroad Company of Puerto Rico* v. *Minimum Wage Board*, 68 P.R.R. 736. It was alleged therein, among other grounds, that said decree was void because it provided that every employee was entitled to vacation with full pay, at the rate of one day for every four consecutive weeks in each one of which he has worked more than four days of not less than six working hours each. We rejected the alleged nullity and said, on page 741: "Nevertheless, the rest periods fixed, which as we have seen, amount to not more than 13 days for each year, fall within the spirit and purpose which moved the lawmaker to enact the Minimum Wage Act, and which, as we have already indicated, are, in brief, to promote the health and safety of the employees and workmen, and to protect them in their means of livelihood in such a manner as will not destroy the very sources of employment and work. The periods devoted to rest are necessary to prevent physical waste, exhaustion of energy, premature senility, and disease among the workmen. Although, apparently, by granting them the employer suffers

a detriment, there is no doubt that in the long run, they turn out to be beneficial to him. The healthier and stronger the workmen of an industry are, the greater the output and efficiency of their labor become, and the fewer the absences and accidents occurring among them. Undoubtedly, vacations with pay for long periods injuriously affect the industry and business. However, the vacation periods involved herein are not unreasonable—13 days per year. On the other hand, this short period of annual vacation for its employees does not deprive the petitioner of its property without due process of law, since upon their return to work, with new enthusiasm and with new energy they will perhaps amply make up for all that which they failed to do or produce for their employer during such period."

This same reasoning, on a better footing, is applicable to the case at bar.

In the Declaration of Policy copied in § 1 of Act No. 3, 1942, *supra*, it was stated that "It is hereby declared that the public policy of this Act, is, through the exercise of the powers of the Legislature of Puerto Rico to enact laws for the protection of the lives, health, and security of employees and workmen, to establish the right of working mothers to a rest which shall include four weeks before and four weeks after the birth." The Legislature, therefore, has undertaken to make use of the authority with which it is vested pursuant to paragraph ten of § 2 of the Organic Act, and in doing so, it has placed the working mothers in a special classification different from other employees and working women in general. That the State can make such a special classification is not questioned. The foundation of this principle was laid down in an opinion of the United States Supreme Court in *Muller* v. *Oregon*, 208 U. S. 412, 421–2, (1908) where it was said:

"That woman's physical structure and the performance of maternal functions place her at a disadvantage in the struggle for subsistence is obvious. This is especially true when the

burdens of motherhood are upon her. Even when they are not, by abundant testimony of the medical fraternity continuance for a long time on her feet at work, repeating this from day to day, tends to injurious effects upon the body, and as healthy mothers are essential to vigorous offspring, the physical well-being of woman becomes an object of public interest and care in order to preserve the strength and vigor of the race. . . It is impossible to close one's eyes to the fact that she still looks to her brother and depends upon him . . . that her physical structure and a proper discharge of her maternal functions— having in view not merely her own health but the well-being of the race—justify legislation to protect her from the greed as well as the passion of man. The limitations which this statute places upon her contractual powers, upon her right to agree with her employer as to the time she shall labor, are not imposed solely for her benefit, but also largely for the benefit of all. Many words cannot make this plainer. . . This difference justifies a difference in legislation and upholds that which is designed to compensate for some of the burdens which rest upon her."

This fair and just doctrine was ratified in *Quong Wing v. Kikendall*, 223 U. S. 59; *Riley* v. *Massachusetts*, 232 U. S. 671; *Miller* v.*Wilson*, 236 U. S. 373; *Bosley* v. *McLaughlin*, 236 U. S. 385 and lastly *West Coast Hotel Co.* v. *Parrish et al.*, *supra*, wherein it was stated that the State has a special interest in the protection of working women. It said on page 398: "What can be closer to the public interest than the health of women and their protection from unscrupulous and overreaching employers?", it being further held that the Legislature "is free to recognize degrees of harm and it may confine its restrictions to those classes of cases where the need is deemed to be clearest", and that this principle "has repeatedly been applied to legislation which singles out women, and particular classes of women, in the exercise of the State's protective power. *Miller* v. *Wilson*, *supra*, p. 384; *Bosley* v. *McLaughlin*, *supra*, pp. 394, 395; *Radice* v. *New York*, 264 U. S. 292, 295–298. Their relative need in the presence of the evil, no less than the existence of the evil itself, is a matter for the legislative judgment."

The criterion of our Legislature, voiced in Act No. 3 of 1942, determined that there was an evil in Puerto Rico, to wit, that there is a positive danger to the health and life of the working women in permitting them to work during the period of eight weeks, that is, four weeks before and four weeks after childbirth. In order to curb this evil, it established the right to a rest during that period with half pay. In view of the precarious economic situation of our working class in general, to order that period of rest without pay would be illusory. *Cardona* v. *District Court*, 62 P.R.R. 59; *Hospital San José* v. *Minimum Wage Board*, 63 P.R.R. 717. The working mothers, besides the ordinary living expenses which they incur during the period of rest, must meet the extra expenses involved in childbirth. We believe that in granting them half pay during the period of rest our Legislature reasonably exercised its police power thereby benefitting not only the health and life of the working women but the employer himself and the community in general. *Cardona* v. *District Court*, *supra;* *West Coast Hotel Co.* v. *Parrish et al.*, *supra;* *Compañía Popular de Transporte* v. *District Court*, 63 P.R.R. 116. It benefits the employer because, by protecting the health of its working women he can keep them after the period of rest thereby increasing its production. To compel them to work during the period prior and subsequent to childbirth when her condition of pregnancy precludes them from performing in a normal way their duties, would indefectibly prove detrimental to the employer. It benefits the community because it not only protects the health and lives of the working women but also of their offspring.

It is also a fact that Act No. 3 of 1942 was in force when petitioner employed the intervener. Therefore, it was aware of the duties imposed by law to pay half salary during the rest period, yet it was not bound to employ women to work in the candy factory. However, if it undertook to do so, being aware of the law, it cannot complain now. As said

by Mr. Justice Holmes in his dissenting opinion in *Adkins* v. *Children's Hospital*, 261 U. S. 525, 570, cited with approval in *West Coast Hotel Co.* v. *Parrish*, *supra*, pages 396–7: ". . . 'This statute does not compel anybody to pay anything. It simply forbids employment at rates below those fixed as the minimum requirement of health and right living. It is safe to assume that women will not be employed at even the lowest wages allowed unless they earn them, or unless the employer's business can sustain the burden. In short the law in its character and operation is like hundreds of so-called police laws that have been upheld.' "

█ In *American Railroad Co.* v. *Minimum Wage Board*, *supra*, we held that the concession to employees of the transportation service of a 13-day vacation, with full pay, was not unreasonable. Nor is it an unreasonable exercise of the police power of the State, but in harmony with the modern social legislation, to grant eight weeks with half pay (equivalent to 28 days with full pay) to working mothers during said period of rest.

*People* v. *Chicago, Milwaukee and St. Paul Railway Co.*, 306 Ill. 486; 138 N. E. 155 and *McAlpine* v. *Dimick*, 157 N. E. 235,[1] cited by petitioner may be clearly distinguished. In these cases it was held that a statute prohibiting an employer to deduct from the salary of its employees two hours of absence on election day for the purpose of voting was invalid. However, in *People* v. *Ford Motor Co.*, 63 N.Y.S. (2d) 677 (1946), the validity of a similar statute was upheld. These laws, nevertheless, have no relation with the health or welfare of employees or workmen. Notwithstanding the ruling in the aforesaid cases, the Supreme Court of Illinois distinguished them in *Zelney* v. *Murphy*, 56 N. E. 2d 754, 757–8 (Ill., 1944), on considering valid an unemployment compensation act. It stated: "These cases, of

---

[1] A similar case is *Commonwealth of Kentucky* v. *Illinois Central R. R. Co.*, 305 Ky. 632 (1948), certiorari denied by the United States Supreme Court on June 14, 1948.

course, could not be controlling as to the statute under consideration here and especially in view of the growing appreciation of public needs and of the necessity of finding ground for a rational compromise between individual rights and public welfare. The growing complexity of our economic interests has inevitably led to an increased use of regulatory measures in order to protect the individual so that the public good is reassured by safeguarding the economic structure upon which the good of all depends."

Lastly, petitioner argues that the words "working mother" used in Act No. 3 of 1942, refer to a legitimate mother and, therefore, not applicable to a case where the intervener became pregnant as a result of adulterous relations. As admitted by petitioner, the act does not define the words "working mother". On the contrary, Section 8 defines the words "working woman" thus: "For the purposes of this Act, *working woman* shall be understood to be *every woman* employed, through salary, wages, day wages, or any other kind of compensation, in any office, commercial or industrial establishment, or public-service enterprise." (Second italics ours.) The law makes no distinction whatsoever between the legitimate or illegitimate mother and we should not, by judicial construction, limit the scope of the statute which aims to protect the health and lives of working mothers in general. The intent of the Legislature was clearly set forth in applying the law to "every woman", without any kind of restriction. Section 60 of the Code of Civil Procedure and the cases construing it prior to its amendment of Act No. 77 of July 20, 1921, cited by petitioner, are not therefore, applicable herein.

The petition is dismissed and the writ annulled.

Mr. Acting Chief Justice De Jesús did not participate herein.