NICK L. MLADE *et al.*, Plaintiffs-Appellants, *v.* MORGAN M. FINLEY, Clerk of the Circuit Court of Cook County, *et al.*, Defendants-Appellees.

First District (5th Division)   No. 81—3010

Opinion filed February 10, 1983.

Charles R. Winkler, Ltd., of North Riverside (Harry G. Fins, of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Jane Clark Casey and Robert S. Vihon, Assistant State's Attorneys, of counsel), for appellees.

JUSTICE LORENZ delivered the opinion of the court:

Plaintiffs Nick and John Mlade filed a class action against the county of Cook, and various county officials, seeking (1) a declaration that several provisions of the clerks-of-courts act (Ill. Rev. Stat. 1979, ch. 25, par. 1 *et seq.*) are unconstitutional, and (2) recovery of the fees paid thereunder. The trial court granted the county's motion to strike the complaint and dismiss the lawsuit, and did not rule on plaintiffs' motion to certify the case as a class action.

According to plaintiffs, section 27.2 of the clerks-of-courts act (Ill. Rev. Stat. 1979, ch. 25, par. 27.2), which establishes the fees that must be paid by litigants to the clerk of the circuit court in counties having a population of more than 1,000,000 people, is invalid for the following reasons:

(1) The statute violates the equal protection and due process clauses of the Federal and 1970 Illinois constitutions (U.S. Const., amend. XIV, sec. 1; Ill. Const. 1970, art. I, sec. 2), as well as the Illinois provisions which prohibit "special legislation" "when a general law is or can be made applicable" (Ill. Const. 1970, art. IV, sec. 13), and which require that classifications created by revenue laws must be reasonable, with each class "taxed uniformly" (Ill. Const. 1970, art. IX, sec. 2);

(2) The "fees" established by section 27.2 are actually taxes, and they therefore constitute either an income tax imposed at a graduated rate, or an ad valorem personal property tax, both of which are forbidden by sections 3(a) and 5(c) of article IX of the 1970 Illinois Constitution;

(3) These statutory charges violate the constitutional provisions which require payment of just compensation when private property is taken for public use under the power of eminent domain. See Ill.

Const. 1970, art. I, sec. 15; U.S. Const., amends. V and XIV, sec. 1; *Chicago, Burlington & Quincy R.R. Co. v. City of Chicago* (1897), 166 U.S. 226, 41 L. Ed. 979, 17 S. Ct. 581.

Although plaintiffs attack the validity of a number of the subsections contained in section 27.2 of the clerks of courts act, their complaint only alleges that they paid fees under, and were at most injured by operation of, section 27.2(1), which establishes the filing fee for complaints in civil actions, and section 27.2(15), which establishes fees for probate proceedings. See Ill. Rev. Stat. 1979, ch. 25, par. 27.2(1), (15).

■ Specifically, the complaint alleges that Nick Mlade paid a $40 fee (under section 27.2(1)) for filing a civil complaint, and John Mlade paid a $75 fee (under section 272(15)(a)) for filing a petition seeking appointment as representative of a decedent's estate. A threshold question, therefore, is whether plaintiffs have standing to question the constitutional validity of other portions of the clerks-of-courts act.

"It is well established that a court will not entertain a challenge to the constitutionality of a statute by a party who is not affected by the statute or aggrieved by its operation." (*Walker v. State Board of Elections* (1976), 65 Ill. 2d 543, 550; accord, *Schiller Park Colonial Inn, Inc. v. Berz* (1976), 63 Ill. 2d 499, 510-11; *Du Bois v. Gibbons* (1954), 2 Ill. 2d 392, 408.) We accordingly hold that plaintiffs only have standing to challenge the validity of subsections (1) and (15)(a) of section 27.2, and we will not consider arguments which concern the constitutionality of other subsections.

Initially plaintiffs argue that the trial court committed reversible error by ruling that, as a matter of law, they could not prove any set of facts which would entitle them to the judicial relief they sought. (See *Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298, 305.) However, when the trial court strikes a complaint and the plaintiff does not ask for leave to amend, this is considered an election "to stand by his complaint" (*Doner v. Phoenix Joint Stock Land Bank* (1942), 381 Ill. 106, 109), and if the lawsuit is dismissed the cause of action "must stand or fall upon [the] contents" of the stricken pleading. *Krachock v. Department of Revenue* (1949), 403 Ill. 148, 153.

■ In the present case, although the trial court struck the complaint and dismissed the lawsuit, plaintiffs never asked for leave to file an amended complaint. As a result, their cause of action stands or falls based on the sufficiency of the stricken pleading.

The purpose of pleadings is to inform the court, and the other litigants, of the legal theories which are being relied upon, and to give

notice of the factual issues which are to be tried. (*Yeates v. Daily* (1958), 13 Ill. 2d 510, 514.) And to achieve justice between the litigants, pleadings must be liberally construed. (Ill. Rev. Stat. 1979, ch. 110, par. 33(3), now codified at Ill. Rev. Stat. 1981, ch. 110, par. 2—603(c).) Nevertheless, Illinois does not permit so-called "notice pleading" (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 426-27), and allegations of fact, rather than mere legal conclusions, are necessary to state a cause of action under Illinois law. See Ill. Rev. Stat. 1979, ch. 110, par. 31, now codified at Ill. Rev. Stat. 1981, ch. 110, par. 2—601; *People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 308.

> "To pass muster a complaint must state a cause of action in two ways. First, it must be legally sufficient; it must set forth a legally recognized claim as its avenue of recovery. When it fails to do this, there is no recourse at law for the injury alleged, and the complaint must be dismissed. [Citations.] Second and unlike Federal practice, the complaint must be factually sufficient; it must plead facts which bring the claim within the legally recognized cause of action alleged. If it does not, the complaint must be dismissed." *People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 308.

As a result of the fact-pleading requirement, a court which is examining the legal sufficiency of a complaint must assume the truth of "all facts properly pleaded" (*Acorn Auto Driving School, Inc. v. Board of Education* (1963), 27 Ill. 2d 93, 96), but it must also ignore conclusions of law which are "unsupported by allegations of specific facts upon which such conclusions rest" (*Pierce v. Carpentier* (1960), 20 Ill. 2d 526, 531).

Applying the principles stated in *Fahner v. Carriage Way West, Inc.* to the present case, we first examine the substantive law upon which plaintiffs' complaint is based. Under the 1970 Illinois Constitution, the General Assembly has "the exclusive power to raise revenue by law except as limited or otherwise provided in this Constitution." (Ill. Const. 1970, art. IX, sec. 1.) But despite this broad grant of authority, plaintiffs argue that section 27.2 of the clerks-of-courts act violates the equal protection and due process clauses of the Federal and 1970 Illinois constitutions (U.S. Const., amend. XIV, sec. 1; Ill. Const. 1970, art. I, sec. 2), as well as the Illinois provisions which prohibit "special legislation" "when a general law is or can be made applicable" (Ill. Const. 1970, art. IV, sec. 13), and which require that classifications created by revenue laws must be reasonable, with each class "taxed uniformly." Ill. Const. 1970, art. IX, sec. 2.

At the start of our discussion of these constitutional provisions, we note that clauses which have been incorporated in the 1970 Constitution unchanged from the 1870 Constitution will generally receive a consistent interpretation. See *Paper Supply Co. v. City of Chicago* (1974), 57 Ill. 2d 553, 565; *Bridgewater v. Hotz* (1972), 51 Ill. 2d 103, 109.

In the context of revenue laws, the equal protection clauses and the special legislation provision merely require that there be a reasonable basis for the statutory classifications enacted by the legislature. (*Thorpe v. Mahin* (1969), 43 Ill. 2d 36, 45-46; see also *Illinois Polygraph Society v. Pellicano* (1980), 83 Ill. 2d 130, 137-38.) Similarly, the same analysis is used when a revenue law is attacked under the due process clauses, and the statute will be upheld if there is a reasonable basis for the legislative classifications. (See *Thorpe v. Mahin* (1969), 43 Ill. 2d 36, 45.) And if each member of a statutory classification is treated uniformly, section 2 of article IX of the 1970 Illinois Constitution is satisfied if the classifications are reasonable. *Caterpillar Tractor Co. v. Department of Revenue* (1970), 47 Ill. 2d 278, 284.

Briefly stated, the pertinent portions of section 27.2 of the clerks-of-courts act are valid under the due process, equal protection, special legislation, and uniform taxation provisions if there is a reasonable basis for the classifications created by this statute. See *Williams v. City of Chicago* (1977), 66 Ill. 2d 423, 432; *Telco Leasing, Inc. v. Allphin* (1976), 63 Ill. 2d 305, 312; *Grenier & Co. v. Stevenson* (1969), 42 Ill. 2d 289, 291-92.

Additionally, with respect to revenue laws "even more than in other fields, legislatures possess the greatest freedom in classification." (*Doolin v. Korshak* (1968), 39 Ill. 2d 521, 528, quoting *Madden v. Kentucky* (1940), 309 U.S. 83, 88, 84 L. Ed. 590, 593, 60 S. Ct. 406, 408.) Furthermore, not only is the statute valid if the legislative classifications are supported by a reasonable basis, but a presumption of constitutionality is applied to revenue laws, and this presumption "may be overcome only by a clear showing that [the statute] is arbitrary and unsupportable by any set of facts." (*People ex rel. Kutner v. Cullerton* (1974), 58 Ill. 2d 266, 273.) Therefore "[t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." *Doolin v. Korshak* (1968), 39 Ill. 2d 521, 528, quoting *Madden v. Kentucky* (1940), 309 U.S. 83, 88, 84 L. Ed. 590, 593, 60 S. Ct. 406, 408; accord, *Berry v. Costello* (1976), 62 Ill. 2d 342, 345.

"The reasons justifying the classification, moreover, need not appear on the face of the statute, and the classification must be

upheld if any state of facts reasonably can be conceived that would sustain it. [Citations.] The burden therefore rests on one who assails the statute to negate the existence of such facts." *Department of Revenue v. Warren Petroleum Corp.* (1954), 2 Ill. 2d 483, 490.

■ Plaintiffs nevertheless assert that we should not apply the presumption of constitutionality to section 27.2 of the clerks-of-courts act because, in *Cook County v. Fairbank* (1906), 222 Ill. 578, the supreme court held that a filing fee based on the value of a probate estate was invalid under a provision in the 1870 Constitution which limited such fees to "a reasonable compensation for services actually rendered." (Ill. Const. 1870, art. X, sec. 12.) Plaintiffs' theory is that once a statute has been ruled unconstitutional, the presumption of validity should not be applied to similar provisions which are subsequently enacted.

A similar situation arose in *Zelney v. Murphy* (1944), 387 Ill. 492, where the supreme court considered cases in which it had taken a more active role in striking down statutes. As the court explained in *Zelney*, the prior cases (which did not use the presumption of constitutionality courts now use when considering social-welfare and economic legislation), "could not be controlling as to the statute under consideration here and especially in view of the growing appreciation of public needs and of the necessity of finding ground for a rational compromise between individual rights and public welfare." (387 Ill. 492, 498.) In other words, courts simply began to give more deference to legislative judgments in the fields of social-welfare and economic legislation. See generally Corwin, Introduction to The Constitution of the United States, Analysis and Interpretation, Sen. Doc. 92–82, 92d Cong. 2d Sess., at XXVIII to XXXI (1973).

Although in *Cook County v. Fairbank* the supreme court invalidated a probate filing fee provision which is somewhat similar to the one under consideration here, the court did not apply the presumption of validity which is now required when examining the constitutionality of such laws, and *Fairbank* is not controlling.

Plaintiffs also argue that it was unreasonable for the General Assembly to provide different fee schedules for counties with populations of less and more than 1,000,000 inhabitants. (Compare Ill. Rev. Stat. 1979, ch. 25, pars. 27.1, 27.2.) We initially note that the $40 filing fee which Nick Mlade allegedly paid to the clerk of the circuit court of Cook County, under section 27.2(1), is the same amount he would have paid under section 27.1(d)(1) if he had filed his complaint in a county with a population of less than 1,000,000 inhabitants.

Therefore Nick has not been treated any differently than he would have been if he had filed his action in a smaller county. However, John Mlade allegedly paid a $75 filing fee under section 27.2(15)(a), although the fee would have been $50 if he had filed the same probate petition in a county subject to section 27.1(j)(1).

The complaint alleges, and plaintiffs argue on appeal, that it was not reasonable for the legislature to distinguish between counties of less and more than 1,000,000 inhabitants when it enacted these fee provisions. However, in *Hunt v. Rosenbaum* (1934), 355 Ill. 504, 510, the supreme court expressly recognized that the great difference in the size of the population of Cook County, in relation to all other Illinois counties, provides a reasonable basis for requiring a larger jury fee in Cook than in smaller counties. See also *Fried v. Danaher* (1970), 46 Ill. 2d 475, 481 (holding that *Hunt v. Rosenbaum* "is equally applicable today").

The *Hunt* case is also applicable to the other fees established by the clerks-of-courts act, and we conclude that there is a reasonable basis for the legislature's decision to classify counties according to whether they have a population of less or more than 1,000,000 inhabitants.

■ Turning from an analysis of the applicable legal principles to the allegations of plaintiffs' complaint, we find that their pleading contains no factual allegations which could, if proven, negate the presumed reasonable basis supporting the population classification created by sections 27.1 and 27.2. Instead, the complaint, and plaintiffs' arguments on appeal, consist solely of conclusions of law. But plaintiffs' " 'burden is not sustained by making allegations which are merely the general conclusions of law or fact ***. Facts relied upon to rebut the presumption of constitutionality must be specifically set forth ***. A motion to dismiss, like a demurrer, admits only facts well pleaded.' " *Heyman v. Mahin* (1971), 49 Ill. 2d 284, 291, quoting *Pacific States Box & Basket Co. v. White* (1935), 296 U.S. 176, 185, 80 L. Ed. 138, 146, 56 S. Ct. 159, 163.

In addition to attacking the population classifications created by sections 27.1 and 27.2, plaintiffs contend that it was unreasonable for the legislature to provide, in section 27.2(15)(a), that the amount of the filing fee for probate petitions should be based on the value of the particular estate. Under this subsection, the filing fee is $75 if the value of the decedent's estate is more than $5,000, while the fee is only $10 for a smaller estate. Ill. Rev. Stat. 1979, ch. 25, par. 27.2(15)(a), (15)(a)(1).

Essentially plaintiffs argue that there is no rational reason for

charging a $75 filing fee for an estate valued at $5,001, but only requiring a $10 fee for an estate valued at $4,999.

> " 'Yet, this is the type of distinction which the law is often called upon to make. it is only a difference in numbers which marks the moment when day ends and night begins, when the disabilities of infancy terminate and the status of legal competency is assumed. It separates large incomes which are taxed from the smaller ones which are exempt ***.' " *S. Buchsbaum & Co. v. Gordon* (1945), 389 Ill. 493, 510-11, quoting *Carmichael v. Southern Coal & Coke Co.* (1937), 301 U.S. 495, 510-11, 81 L. Ed. 1245, 1253-54, 57 S. Ct. 868, 873.

Moreover, at oral argument plaintiffs conceded that it was reasonable for the legislature to conclude that the clerk's office will have to perform more work for a large estate than a small one. And still further, neither the complaint nor plaintiffs' briefs refer to facts which could, if proven, rebut the presumption that the legislature acted reasonably in establishing a larger filing fee for estates valued at more than $5,000.

The next issue is whether the $75 probate filing fee established by section 27.2(15)(a) of the clerks-of-courts act is invalid under sections 3(a) and 5(c) of article IX of the 1970 Illinois Constitution. According to plaintiffs, this charge, which the statute designates a "fee," actually constitutes a tax because, purportedly, it provides more revenue than the value of the services given in return for the "fee." Based on this conclusion, plaintiffs also conclude that this purported "tax" is invalid under either the constitutional provision which prohibits graduated-rate income taxes (Ill. Const. 1970, art. IX, sec. 3(a)) or the provision which forbids ad valorem personal property taxes (Ill. Const. 1970, art. IX, sec. 5(c)).

"[A] fee is compensation for particular services." (*People ex rel. Olson v. Atchison, Topeka & Santa Fe Ry. Co.* (1945), 389 Ill. 204, 207.) " 'Fees' are a reward or wages given to one for the execution of his office, the term being used synonymously with percentage or commission." *People ex rel. City of Peoria v. Weston* (1934), 358 Ill. 610, 615.

Although the distinction between fees and taxes is not always observed (71 Am. Jur. 2d *State & Local Taxation* sec. 15, at 352 (1973)),

> "A tax is imposed upon the party paying it by mandate of the public authorities, without his being consulted in regard to its necessity, or having any option as to its payment. The amount is not determined by any reference to the service which he receives from the government, but by his ability to pay, based on

property or income. On the other hand, a fee is always voluntary, in the sense that the party who pays it originally has, of his own volition, asked a public officer to perform certain services for him, which presumably bestow upon him a benefit not shared by other members of society." *Stewart v. Verde River Irrigation & Power District* (1937), 49 Ariz. 531, 544-45, 68 P.2d 329, 334-35; see also *National Cable Television Association v. United States* (1974), 415 U.S. 336, 340-41, 39 L. Ed. 2d 370, 375, 94 S. Ct. 1146, 1149.

We need not decide in the present case whether, under Illinois law, a "fee" is a "tax" if it generates more revenue than the cost of the services given in return for the fee. We also need not decide exactly what services should be considered as being given in return for the fee in question. The underlying premise in plaintiffs' argument is the assertion that the fee established by section 27.2(15)(a) of the clerks-of-courts act produces a government profit. But neither the complaint nor plaintiffs' briefs refer to any *facts* which could, if proven, establish that this statutory fee generates more revenue than the cost of the services rendered by the clerk's office, or by the circuit court itself.

Instead, relying on *Cook County v. Fairbank* (1906), 222 Ill. 578, and similar cases from other jurisdictions, plaintiffs conclude we should hold, as a matter of law, that section 27.2(15)(a) imposes a tax rather than a fee. But as we noted earlier, the *Fairbank* court invalidated a "fee" without applying the presumption of validity which the supreme court now requires.

We recognize that in early cases which considered the validity of graduated probate fees, courts often concluded that "there is no reasonable relationship between the size of an estate and the amount of services necessarily required in its administration." (Annot., *Validity of Statutes Imposing a Graduated Probate Fee Based Upon Value of Estate* 76 A.L.R.3d 1117, 1120 (1977).) However, as we noted earlier, plaintiffs conceded at oral argument that a large estate will generally require more services than a small estate, and we agree with the modern cases which have held that "a statute fixing a graduated schedule of probate charges [is] presumably valid." (Annot., 76 A.L.R.3d 1117, 1120.) "[S]uch an approach is not only more realistic in point of fact, but *** is also more nearly consonant with the generally recognized presumption of the validity of legislative action." Annot., 76 A.L.R.3d 1117, 1120.

■ Although the statute attacked in the present case merely sets a higher fee for estates over $5,000, rather than establishing a gradu-

ated rate, the same principles are applicable, and we must presume that the statutory charge is a valid fee, not a tax.

Plaintiffs make two arguments which must be briefly mentioned with respect to this issue. First plaintiffs point out that the county's motion to strike and dismiss states, in part, that the fees imposed by section 27.2 are "tantamount to a tax on litigation." According to plaintiffs, this constitutes a binding judicial admission that the statutory charges constitute a tax rather than a fee.

■ Despite the distinction between "taxes" and "fees," both are used by the government to raise revenue, and it was accurate for the county to state that the charges in question are *"tantamount* to a tax on litigation." (Emphasis added.) We do not find that this "admission" aids plaintiffs' case.

■ It is further argued that these statutory charges constitute "taxes" because various provisions refer to "fees" as being "taxed." (See Ill. Const. 1970, art. IX, sec. 2, and Ill. Rev. Stat. 1979, ch. 33, par. 31.) But, as used in these provisions, the term "taxed" obviously refers to the process of assessing a charge such as court costs or fees. (See Webster's Third New International Dictionary 2345 (1971).) Under plaintiffs' interpretation of these provisions, fees always constitute taxes. We find no merit to this argument.

The complaint in this case fails to state facts which could, if proven, rebut the presumption that the charge imposed by section 27.2(15)(a) is a valid fee. Thus plaintiffs have failed to allege facts which could rebut the "presumption that the General Assembly and its committees acted conscientiously and did their duty in making a survey of the conditions prevailing in the [circuit courts] of the State before enacting [the clerks-of-courts act, as amended]." *Du Bois v. Gibbons* (1954), 2 Ill. 2d 392, 399.

■ The next issue, as listed at the beginning of plaintiffs' opening brief, is whether "the statutory clerk's fees constitute a taking of property in violation of the Federal and Illinois constitutions." Although we find no reference to this issue in the argument portion of the brief, we nevertheless find no merit to this argument because the "just compensation" provisions (Ill. Const. 1970, art. I, sec. 15; U.S. Const., amends. V and XIV, sec. 1) apply only to exercises of the power of eminent domain, not to applications of the authority to raise revenue for public purposes. See *Zelney v. Murphy* (1944), 387 Ill. 492 (holding that compulsory payments by employers under the Unemployment Compensation Act did not violate the "just compensation" provisions); 26 Am. Jur. 2d *Eminent Domain* sec. 4, at 642 (1966); *cf. Coryn v. City of Moline* (1978), 71 Ill. 2d 194, 202 ("The taxes im-

posed upon property within a special services area need not directly correspond to the monetary value of the benefits received").

Finally, plaintiffs conclude that the clerks-of-courts act is invalid under the 1870 Illinois Constitution. See *People ex rel. Hanrahan v. Caliendo* (1971), 50 Ill. 2d 72, 76 (stating: "[W]e do not consider that the adoption of a new constitution serves to validate all statutes enacted under the former constitution regardless of their legality or illegality under the earlier constitution").

However, plaintiffs present no argument in support of their conclusion. In fact, the argument portion of plaintiffs' brief does not even list or refer to the sections of the 1870 Constitution which plaintiffs believe invalidate the clerks-of-courts act. The applicable rule in this situation is that,

> "Where the constitutional validity of a statute is assailed the objection must be specific and complete. It is not enough merely to assert in a vague and general fashion that constitutional safeguards are violated." *Biggs v. Cummins* (1955), 5 Ill. 2d 512, 516; see also *Redmond v. Novak* (1981), 86 Ill. 2d 374, 378 (holding that constitutional issues cannot be raised by general allegations which "do not specify in what manner the constitutional provisions were infringed").

●■ We accordingly hold that plaintiffs have not adequately raised or presented the issue of the validity of section 27.2 under the 1870 Constitution.

Based on all the reasons given above, we find that plaintiffs' complaint fails to state facts upon which judicial relief could be granted. Consequently, the court did not err in striking the complaint. And because plaintiffs elected to stand on the stricken complaint, the court did not err in dismissing the lawsuit. Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

SULLIVAN and MEJDA, JJ., concur.