FRANK CIACCO *et al.*, Plaintiffs-Appellants, *v.* THE CITY OF ELGIN *et al.*, Defendants-Appellees.

Second District   No. 79-302

Opinion filed June 25, 1980.

Raymond L. Jones and Arno E. Gerbrecht, both of Jones & Gerbrecht, of Elgin, for appellants.

Erwin W. Jentsch, Corporation Counsel, of Elgin, for appellees.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

The plaintiffs, who are taxpayers in the city of Elgin, appeal from the judgment of the circuit court denying an injunction sought by the plaintiffs to enjoin the collection of certain taxes and the purchase of property pursuant to a city ordinance creating a service district known as Special Service Area Number Two. The purpose of Special Service Area Number Two is to build and maintain a downtown parking lot. The authority for a special tax to be imposed within Special Service Area Number Two, in addition to the general city taxes, is found in the Illinois Constitution of 1970, article VII, section 6, and the subsequent enabling legislation passed by the General Assembly being section 1 *et seq.* of "An Act to provide the manner of levying or imposing taxes for the provision of special services to areas within the boundaries of home rule units and non-home rule municipalities and counties" (Ill. Rev. Stat. 1977, ch. 120, par. 1301 *et seq.*).

The Constitution gives general authority for the creation of such a special district under article VII, section 6, but the supreme court held in *Oak Park Federal Savings & Loan Association v. Village of Oak Park* (1973), 54 Ill. 2d 200, that that section of the Constitution was not self-

executing and that enabling legislation was required to be enacted by the General Assembly. This was done by special statute as cited above, the Act providing for the manner of levying taxes for the provision of special service areas (Ill. Rev. Stat. 1977, ch. 120, par. 1301 *et seq.*). The Act defines the special service area and prescribes the proceedings to be followed for establishing such area, including notice and public hearing and the method of filing objections to the creation of such area.

The complaint filed by the plaintiffs in this case prayed for (1) an injunction to halt the spending of any money pursuant to the ordinance authorizing the creation of the special service area, and (2) a declaration that the ordinance was void because properly objected to by at least 51% of the electorate residing in the area and 51% of the owners of record therein, and because the ordinance creating the special service area was not enacted in accordance with the enabling legislation and violated due process.

After an extensive hearing the trial court denied the injunction prayed for and held the ordinance was properly enacted and was valid and that the required percentage of owners of record had not filed valid petitions objecting to the creation of the special service area. The trial court also found that 51% of the electors residing within the area had properly objected to the creation of the special service area, and as to that finding the defendants have cross-appealed.

The plaintiffs in this appeal raise the following issues: (1) Whether the ordinance creating the special service area was passed in accordance with the provisions of the enabling act; (2) whether or not at least 51% of the owners of record of land within the proposed area filed valid objections to the creation of the special service area; (3) whether the passage of the ordinance in creating the special service area and the levy of the taxes therefor violated the equal protection and due process clauses of the constitutions of the United States and the State of Illinois; (4) whether or not the enabling statute (sections 1-11) is contrary to the constitutions of the United States and the State of Illinois and (5) whether the trial court erred in refusing to admit certain testimony offered by the plaintiffs.

The plaintiffs raise several points in support of the contention that the ordinances creating the special service area and levying the taxes therefor were not passed in accordance with the enabling legislation: (a) That proper notice of the hearing on the ordinance was not given; (b) that the boundaries of the area were not designated by a proper and correct legal description; (c) that the city clerk did not file a certified copy of the ordinance with the county clerk within the time required by law and moreover failed to file an accurate map of the area with the county clerk; (d) there was also a contention that the corporation counsel and others induced certain taxpayers to suppose that their property—of a religious or

charitable nature—would be exempt from the tax imposed by the service area. Inasmuch as the ordinances as enacted did not provide for such exemptions and no owners of religious or charitable property have complained, this contention may be disregarded insofar as it affects the validity of the ordinance.

■■ Several questions under the general category of failure to comply with the enabling legislation are raised as to notice. It is contended that notice of the proposition to create a special service area was sent only to owners of real estate within the area, whereas the enabling act specifies that "all interested persons owning real estate or taxable personalty located within the special service area will be given an opportunity to be heard at the hearing regarding such tax levy." (Ill. Rev. Stat. 1977, ch. 120, par. 1304(3).) This indicates that notice should have been given to owners of personal property within the area, who would be taxed on its value. However, these personal property taxpayers do not appear to have objected to the ordinance on the ground invoked here—the objection comes from the plaintiffs in this action who are real property owners and who do not assert that no notice was given to them. It is not established that any personal property taxpayers were prejudiced by lack of notice, but whether they were or not, the plaintiffs here received notice and were not so prejudiced. They have no standing to complain that others were prejudiced by lack of notice. (*City of Mattoon v. Jennings* (1929), 336 Ill. 93.) We will not invalidate a city ordinance on the ground that persons who did not object to its procedural aspects would have had good grounds for doing so had they been so inclined.

■■ Also, as to notice of the hearing, it is conceded by the city that there was an error made in designating the boundaries of the proposed area in the published notice describing the boundaries of the area to be created. This notice indicated that the area was partly in "the northeast quarter of section 13," whereas the northeast quarter of section 13 is actually entirely outside the boundaries of the proposed area of Special Service Area Number Two. No map was furnished with the notice, and when the map of the area was later filed by the city clerk with the county clerk it confirmed the fact that the northeast quarter of section 13 was outside the area designated on the map and otherwise described by block and subdivision in the ordinance. The assessment map supervisor for the county testified that the inadvertent error in including "the northeast quarter of section 13" in the legal description of the area did not prevent her from performing her function of preparing the tax code numbers, as she did not work from the map but from the subdivision and block description, working primarily from the list of tax parcels. While there was an error, it does not appear to have prevented the correct designation of the actual area involved or to have hindered the persons entitled to

notice from receiving it, since the erroneous description was disregarded in practical effect, in favor of the subdivision and block designation which accurately designated the area in question. We do not regard this error as of such magnitude as to invalidate the notice and the ordinance. In *Dowsett v. City of East Moline* (1956), 8 Ill. 2d 560, 569, the court said:

> "Where electors have been given notice of the time and place of holding an election and the question submitted, substantial compliance with the statute regarding notice is sufficient where no prejudice is shown."

In *People ex rel. Village of Worth v. Ihde* (1961), 23 Ill. 2d 63, 66, where there was a discrepancy between the petition for incorporation and the accompanying map, the court said:

> "Descriptions of municipal boundaries are not construed with the same strictness as those contained in deeds and contracts (*Dowsett v. City of East Moline*, 8 Ill. 2d 560), and if the incorporating petition and accompanying map, when viewed together, fairly apprise the public of the property involved, the description will be considered proper."

We do not think an interested person was unjustly deprived of notice or seriously misled by the error in referring to the northeast quarter of section 13 and this contention may be disregarded.

■■ A further technical objection, based on noncompliance with the enabling legislation, is raised with regard to the requirement that the city clerk file an accurate map of the proposed service area with the county clerk at the time of filing the ordinance creating the special service area. It is contended that since the map furnished to the county clerk did not include "the northeast quarter of section 13"—erroneously referred to by the notice and ordinance—that the map did not comport with the ordinance and therefore was not accurate. Since the plaintiffs themselves assert that the ordinance is incorrect in its reference to the northeast quarter of section 13, obviously if the map is correct it must differ from the ordinance, but as we have indicated above, we are inclined to disregard this error in mentioning the northeast quarter of section 13 since its effect was otherwise negated. It is also pointed out that the city clerk did not file the ordinance with the county clerk by the third Tuesday of September—the 20th—as required by statute, but filed it on September 21, the next day. Since the ordinance authorizing the levy of taxes had been filed on September 20, as required, the levy was filed before the ordinance. However, it is not contended that the levy of taxes was made before the ordinance was passed but only that it was filed with the county clerk preceding the filing of the ordinance. We fail to see that this difference of one day in filing the ordinance with the county clerk affected the validity of the ordinance—it is procedural, not substantive.

See section 236 of the Revenue Act of 1939 (Ill. Rev. Stat. 1977, ch. 120, par. 717), indicating that such informalities not affecting the substantial justice of the levy do not invalidate the ordinance.

██ The plaintiffs also contend that the Open Meetings Act (Ill. Rev. Stat. 1977, ch. 102, par. 41 *et seq.*) was violated in that a notice of the meeting establishing a special service area and the meeting at which the ordinance was actually adopted, was not posted on the door of the building where the meeting was to be held (presumably the city hall), which is required by the Open Meetings Act, in addition to the publication in the local news media. There is no evidence indicating that such notice of these meetings was posted on the door of the city hall. However, this omission does not invalidate the legislation enacted at such meeting if otherwise regularly enacted in all respects. In *Board of Education v. County Board of School Trustees* (1978), 60 Ill. App. 3d 415, and *In re Organization of Byron Park District* (1978), 67 Ill. App. 3d 61, the court held that a violation of the Open Meetings Act did not *per se* invalidate the legislative action taken at such meeting. We again adhere to that view.

We believe, therefore, that the procedural requirements of the enabling legislation were substantially complied with in establishing the special service area in this case.

It is further contended by the plaintiffs, however, that the ordinance establishing the special service area is without effect and the tax levy thereunder is illegal because 51% of the electors and 51% of the owners of record of the land located within the proposed area signed petitions objecting to the creation of the special service area. Under section 9 (Ill. Rev. Stat. 1977, ch. 120, par. 1309) (the enabling legislation) it is provided as follows:

> "If a petition signed by at least 51% of the electors residing within the special service area and by at least 51% of the owners of record of the land included within the boundaries of the special service area is filed with the municipal clerk or county clerk, as the case may be, within 60 days following the final adjournment of the public hearing objecting to the creation of the special service district, the enlargement thereof, the levy or imposition of a tax or the issuance of bonds for the provision of special services to the area, or to a proposed increase in the tax rate, no such district may be created, enlarged, or tax may be levied or imposed nor the rate increased, or no such bonds may be issued. The subject matter of said petition shall not be proposed relative to any signatories of said petition within the next two years."

The trial court found that more than 51% of the "electors" signed petitions objecting to the special service area but that less than 51% of the "owners of record" signed objecting petitions. Since the statute requires

that 51% of the electors *and* 51% of the owners of record sign petitions objecting to the creation of the special service area, to invalidate it, the failure of either class to do so will defeat the objections and validate the ordinance.

We believe the findings of the trial court with regard to the number of electors residing in the district, although objected to by the city, is not against the weight of the evidence. Sixty-two names were stipulated to as being proper electors and 12 were identified as registered voters who the court found to be living within the special service area at the time of signing the petition. In addition, the court found by the preponderance of the evidence that there were 23 more persons qualified to be considered as "electors" residing in the area at the time the objecting petitions were signed. Thus the court found there was a total of 97 electors in the area eligible to sign the petition. Of this number, 36 proper objectors were stipulated to and the court found by the preponderance of the evidence that 23 others properly signed the objecting petition. Thus, 59 out of 97 possible electors objected, which was more than 51%.

This finding of the trial court is the subject of a cross-appeal by the city. The city contends that an "elector" must be a registered voter and cites section 4—1 of the Election Code (Ill. Rev. Stat. 1977, ch. 46, par. 4—1), reading in part as follows:

> "Except as provided in this Article 4, it is unlawful for any person residing in a county containing a population of less than 500,000, to vote at any primary, general or special election at which any state, county or township officers are to be nominated or elected, or at any election at which propositions submitted by a constitutional convention are to be voted on or at any election at which officers of a city, village or incorporated town with a population of 500 or more are to be nominated or elected, unless such person is at the time of such election a registered voter under the provisions of this Article 4."

The trial court, however, ruled that the controlling statute was section 3—1 of the Election Code (Ill. Rev. Stat. 1977, ch. 46, par. 3—1), reading as follows:

> "Every person having resided in this State and in the election district 30 days next preceding any election therein, and who is a citizen of the United States, of the age of 18 or more years is entitled to vote at such election for all offices and on all propositions."

■■ We agree with the trial court that the more general provisions of section 3—1 with regard to qualifications of electors is applicable in this case. This is in accord with *Bergis v. Village of Sunnyside* (1958), 13 Ill. 2d 50, and *People ex rel. Jordan Co. v. Village of Forest View* (1961), 21 Ill.

2d 384. These cases dealt with annexations. The Illinois Municipal Code (Ill. Rev. Stat. 1965, ch. 24, par. 7—1—1.1) was afterward amended to require registration as a qualification for voting on an annexation petition; this amendment does not purport to apply generally to other municipal propositions such as that before us. We believe the trial court ruled correctly as to the meaning of "electors" in the particular case before us.

A more difficult question is presented as to "owners of record," 51% or more of whom must also object to the special service area in order to invalidate the ordinance creating it. Recorded fee owners were conceded to be "owners of record" but voluminous testimony was submitted on the question of title as to certain other individual property owners, who were contract buyers or sellers, trust beneficiaries, corporate officers and administrators. The court found that there was a total of 108 owners of record. As to contract purchasers, the court ruled that "if there is evidence of possession and right of control passing to the vendee under the contract purchase agreement and there is a memorandum or other notice of that agreement which was at the time recorded in the County Recorder's Office, in such case the fee owner and the contract purchasers are each and all owners of record," citing the case of *Chapman v. County of Will* (1973), 55 Ill. 2d 524, as authority.

As to land trustees, the court ruled in its amended order that the trustee must be regarded as the owner of record rather than the beneficiary of the land trust and that the petition must be signed by the trustee. (*People ex rel. Hart v. Village of Lombard* (1925), 319 Ill. 56; *Department of Public Works & Buildings v. Kelly* (1976), 40 Ill. App. 3d 896; *In re Annexation to Village of Round Lake Park* (1975), 29 Ill. App. 3d 651.) Where a corporation was the title holder the court held that the signature must be that of an authorized officer on behalf of the corporation, except that in the case of a sole stockholder and director, his individual signature would suffice. An administrator was not considered as an owner of record for the purposes of signing the objection. (See *Eckland v. Jankowski* (1950), 407 Ill. 263.) Based on these criteria, the trial court found that there were 44 valid objecting signatures by stipulation and (as amended) five more by the court's ruling, making a total of 49. Since there were found to be 108 owners of record, the objectors had less than 51% of the total, and the ordinance was thus held by the court to have been preserved.

■■ The plaintiffs contend that the trial court erred as to certain objectors (trust beneficiaries and contract purchasers), whose signatures were not counted as being valid. The plaintiffs contend that "the intent of the statute [Ill. Rev. Stat. 1977, ch. 120, par. 1309] when read as a whole must be interpreted to mean that those persons who shall ultimately be liable for the tax, the taxpayers, have the right to object to the special service

area and levy." We are of the opinion, however, that the trial court was correct in its concept of "record owners" and that certain objecting signers were correctly eliminated as not meeting that concept. It will be noted that this affirmance of the trial court's finding as to the number of "electors" qualified to sign the petition objecting to the ordinance disposes of the city's cross appeal on that point.

■■ ■ The plaintiffs' third argument on this appeal is that the ordinance creating the special service area is unconstitutional because (a) the boundaries of the area are arbitrary and irrational and properties were included which received no benefit, (b) that the exemption from the special tax of certain religious and charitable institutions increased the burden to other taxpayers and denied them equal protection and due process. To render an ordinance creating a special taxing district invalid on the ground of inequality of benefit, the disparity must be so great as to be obviously unjust and irrational—a mere projected difference in benefits anticipated is not sufficient. In the case before us the argument against the ordinance is apparently based on (1) the testimony of the plaintiffs' real estate expert, who was of the opinion that certain properties in the area would receive no benefit from the proposed parking facility and would actually suffer thereby since it would increase their fixed costs and (2) the fact that certain properties in the mall area were deliberately excluded from the special service area although they might be reasonably expected to benefit therefrom. While the testimony of Kyser, the plaintiffs' expert, did clearly express the opinion that certain properties would not be benefited by the special service area, he was testifying as an expert on behalf of the plaintiffs, and the trial court was not obligated to accept his opinion as establishing a fact. The expert's opinion is advisory only as to the trier of fact (*Trauscht v. Gunkel* (1978), 58 Ill. App. 3d 509; *Hall v. Kirk* (1973), 13 Ill. App. 3d 656). Moreover, it was apparently the opinion of the city manager and a traffic advisory committee who assisted in a study of the central business district that the need for more parking was general to the central business district. Where the benefit of the parking facility would begin and where it would end was thus difficult to determine with any certainty—while direct benefits might be disparate, the indirect benefits might be expected to extend to the entire central business area. Thus we see no basis for invalidating the ordinance on the ground that it was impermissibly discriminatory merely because some properties would be immediately benefited more than others.

■■ The plaintiffs' argument with regard to the exemption of certain charitable and religious institutions has two defects: (1) It does not have the effect of invalidating the ordinances because the ordinances themselves contained no such exceptions. Whether or not these properties were in actual practice dispensed from the tax is a different matter. While

we agree with the plaintiffs that the State exemption from general taxes for the religious and charitable institutions in question did not dispense them from the special service area tax, we think the neglect of the city taxing authorities to levy on these institutions would not have the effect of rendering the special service area ordinances invalid. In any event, however, we do not consider this contention in this appeal for the reason that it was not alleged in the complaint nor in the plaintiffs' brief that such exemptions constituted a denial of equal protection and due process. The plaintiffs did raise the question of the "gerrymandering" of the special service area by including a number of tax-exempt properties within the area with the effect that these landowners did not object to the ordinance yet could be counted for determining the total number of owners of record. This contention is in effect a complaint against "gerrymandering" in creating the district. This, however, is not the constitutional question raised in this appeal which, as we understand it, is based on the contention that the ordinance and the levy are invalid because such religious and charitable institutions are being treated as being exempt from taxation, whereas they are not actually so exempt. This is a different question and one we need not consider for the first time on appeal.

■■ As to the issue of "gerrymandering" itself, the only basis for the allegation that the special service district had been gerrymandered was that the territory of the district included a substantial number of parcels of property which were designed as being exempt from the tax, because they were traditionally exempt under State revenue laws as being religious or charitable organizations. The fact that there are a substantial number of properties in the district which are exempt under the general tax structure of the State is not *per se* an indication of a fraudulent gerrymandering of the district. It was, of course, convenient for the purposes of the city in securing approval of the Special Service Area district that some record landowners would not be interested in opposing the creation of the district because they supposed their properties would not be taxed anyway. However, we do not consider this fact to be sufficient to establish a fraudulent gerrymandering. In *Coryn v. City of Moline* (1978), 71 Ill. 2d 194, 202, our supreme court observed in upholding a special service area tax:

> "Our holding on this point, however, does not mean that local units of government are completely free to gerrymander the boundaries of special service areas to maximize revenues, without regard to whether there is a rational relationship between the property taxed and the property served. Evidence of such fraudulent procedures might justify invocation of a court's equity jurisdiction."

The court in *Coryn*, however, was not deciding that issue, and the remark was merely advisory, indicating that there are limits to the schemes a city

can employ to "maximize revenues." We do not have an instance of maximizing revenues here—the implication is that the boundaries of the district were so drawn as to give advantage to the supporters of the district rather than its opponents. It is implied that the inclusion of territory which involved a number of tax-exempt properties was deliberately contrived to maximize the number of owners of record who would not oppose the creation of the service area. However, it is not self-evident that the boundaries of the area would have been more compact and logical if the exempt properties in question had been left out. These properties are contiguous to certain other taxable property, and the juxtaposition of church properties and commercial establishments obviously grew up over a long period of time. Churches have a tendency to cluster, and it is just as logical to assume that the area where it is desirable to construct a parking facility simply happened to include a number of properties exempt from taxes under the general revenue laws of Illinois. While the shape of the proposed district is not entirely regular, that does not indicate *per se* that impermissible gerrymandering occurred in the formation of the district. It may have been the design of the city to avoid a defeat on the proposal to create the district by exempting churches and other State-exempt organizations from the special-service-area levy, but we do not consider this to amount to a violation of due process—it was merely a continuation in the special service area of the exemption allowed by the State to certain religious and charitable organizations. We think a continuation of this State taxing policy to the special-service area is not a violation of due process. In the case of churches or charitable entities parking is a less persuasive consideration than with competing commercial establishments. The exemption seems logically related to the nature of the property exempted and the fact it was politically expedient for the city to extend the exemption to churches and charitable institutions has a reasonable economic basis as well as tradition in its favor, and it cannot be said to be arbitrary or unreasonable. Nor can we say that the drawing of the boundaries to include these properties was manifestly a gerrymander, since they are all within or proximate to the central business district which the parking facility known as Special Service Area Number Two is designed to serve. Giving due consideration to the caveat uttered by the supreme court in *Coryn*, we do not find the boundaries of Special Service Area Number Two to constitute an impermissible gerrymandering.

■■ We now come to the plaintiffs' further argument that the enabling legislation itself (Ill. Rev. Stat. 1977, ch. 120, par. 1301 *et seq.*) is contrary to the constitutions of the United States and the State of Illinois and therefore null and void. This is based on two contentions: (a) That the

notice provisions of the enabling legislation (sections 4 and 5 of the Act) provide that both real estate and personal property shall be taxed, but notices are required to be sent only "to the person or persons in whose name the general taxes for the last preceding year were paid on each lot, block, tract or parcel of land lying within the special service area." (Ill. Rev. Stat. 1977, ch. 120, par. 1305). It is thus apparent, the plaintiffs say, that notice by mailing is only required to be given to real property owners, and notice to personal property owners is not provided for. Thus, the plaintiffs argue, the notice provisions of the enabling act are discriminatory and unconstitutional. While we think there are some practical differences between notices to owners of real property—which is fixed—and notice to owners of personal property—which can be moved at will in and out of the taxing district—we do not find it necessary to decide the constitutional question raised here as to the form of notice. As was said above, it is not alleged that the plaintiffs here were either personal property owners or that they did not receive notice of the meeting in question. They, therefore, had no standing to complain of the form of notice to personal property taxpayers, and we find it unnecessary to consider the constitutional objection that the personal property taxpayers were deprived of due process. (b) It is also contended that the tax thus authorized is further discriminatory because the personal property would not be benefited merely by being in a certain location, such as within the confines of the special service area, so that taxation would result without any corresponding benefit. This, the plaintiffs contend, renders the tax invalid as being in violation of the equal protection and due process clauses of the 14th amendment. We do not agree with the contention that personal property receives no benefit based on its location—we believe many kinds of personal property are more valuable in a certain location than others because of convenience to shoppers as the result of increased parking facilities.

■■ The final argument raised by the plaintiffs is that the trial court erred in excluding certain testimony. Plaintiff's counsel attempted to elicit from Robert Keith Roll, the assistant manager of community development for the city of Elgin, certain answers to questions regarding the possible personal interests of some of the advisory committee members in drawing the special service area boundaries. The trial court ruled that such questions were irrelevant to the thrust of the plaintiffs' case. We believe this ruling was correct. While some members of a citizens' advisory committee may have had personal motives in recommending certain boundary lines for the special service area, the establishment of this fact would not serve to invalidate the council's action in passing the ordinance. We think the court was correct in believing that absent

evidence of fraud or corruption involving the governmental body, in this case the city council, the court could not go behind the council's motives in passing the legislation.

The judgment of the circuit court of Kane County is affirmed.

Judgment affirmed.

SEIDENFELD, P. J., and NASH, J., concur.