ELGIN NATIONAL BANK, Trustee, Petitioners-Appellants, *v.* A. CORILLA ROWCLIFF, Supervisor of Assessments, Kane County, *et al.*, Respondents-Appellees.

Second District    No. 82—45

Opinion filed October 5, 1982.—Rehearing denied November 10, 1982.

Donald J. Weaver, of Elgin, for appellants.

Robert J. Morrow, State's Attorney, of Geneva, and Clarence F. Wittenstrom, Jr. and Erwin Jentsch, both of Elgin, for appellees.

JUSTICE UNVERZAGT delivered the opinion of the court:

This case is a follow-up of *Ciacco v. City of Elgin* (1980), 85 Ill. App. 3d 507. In that case, Ciacco, a resident of Elgin, sought an injunction against the city of Elgin to restrain the city from proceeding with the establishment of a special taxing district designated by city ordinance as "Elgin Special Service Area" and the spending of public monies pursuant to such ordinance, on the ground that the ordinance was void for failure to comply with the provisions of the enabling legislation authorizing the creation of such special taxing district. (Ill. Rev. Stat. 1977, ch. 120, par. 1301 *et seq.*) The complaint for injunction also attacked the ordinance creating the special taxing district as being arbitrary and irrational in its boundaries and because of its exemption of certain properties and its disregard of the difference in benefits that might be derived from the district as between one tax-

payer and another.

We held in *Ciacco v. City of Elgin* (1980), 85 Ill. App. 3d 507, that the Elgin ordinance was not void for procedural defects and that the legislation had been legally enacted. It is noted in that opinion that the contention had been raised that the ordinance creating the special taxing district was invalid because of certain exemptions from the tax for churches, charitable institutions and municipal buildings within the district. We rejected the contention that the ordinance itself was rendered invalid by this announced policy since the ordinance itself specified no such exemptions and deliberate gerrymandering of the district to include traditionally exempt properties such as was said to be questionable in *Coryn v. City of Moline* (1978), 71 Ill. 2d 194, 202, had not been established as a fact by the record in *Ciacco*.

We said in *Ciacco* that while we agreed with the plaintiffs "*** that the State exemption from general taxes for the religious and charitable institutions in question did not dispense them from the special service area tax, we think the neglect of the city taxing authorities to levy on these institutions would not have the effect of rendering the special service area ordinances invalid. In any event, however, we do not consider this contention in this appeal for the reason that it was not alleged in the complaint nor in the plaintiffs' brief that such exemptions constituted a denial of equal protection and due process." *Ciacco v. City of Elgin* (1980), 85 Ill. App. 3d 507, 517.

The present appeal narrows the focus to the question of exemption of properties within a special service area and raises three issues: (1) whether those parcels of realty in a special service area which are exempt by statute from general real estate taxes are liable for a special service area tax; (2) whether there exists an administrative remedy for property owners being taxed in a special service area whereby they can complain to an administrative body that taxing officials have omitted or failed to subject certain parcels in the special service area to the tax; (3) whether, if such administrative remedy exists, it must first be exhausted before seeking judicial relief, even though the taxing officials have already refused to perform their official duty to tax such omitted parcels within the district.

The petitioners, taxpayers within the special service area, allege injury by reason of being assessed a disproportionate amount of tax due to the exemptions and seek a writ of *mandamus* to force the taxing authorities to list for taxation and assess a tax against the property heretofore omitted from the tax rolls as being exempt.

The trial judge, after a hearing, dismissed the petition for the

writ of *mandamus* on the ground that the petitioners had not exhausted their administrative remedies. Inasmuch as the trial court dismissed the petition for failure to exhaust administrative remedies, we will comment on that issue first. We believe the trial court erred in resting its decision on the petitioners' failure to exhaust their administrative remedies, specifically referring to the failure to first file a complaint. This refers to section 108(4) of the Revenue Act (Ill. Rev. Stat. 1981, ch. 120, par. 589(4)), which states:

> "On complaint in writing that any property described in such complaint is incorrectly assessed, the board shall review the assessment, and correct it, as shall appear to be just, but in no case shall such property be assessed at a higher percentage of fair cash value than the assessed valuation of other property in the assessment district prior to equalization by the board or the Department. ***."

The petitioners here contend that the quoted reference to filing a complaint—which appears to be the basis of the trial court's conclusion that an administrative remedy existed which had not been exhausted by the petitioners—is irrelevant under the circumstances of this case. Petitioners contend that the quoted language has nothing to do with a situation in which the authorities deliberately *omit* the property from the assessment rolls. In the case before us, petitioners point out, there was not either an *excessive* nor an *inadequate* assessment, either of which could be reviewed by the board of review and corrected. Rather, there was no assessment at all; therefore, the words of section 108(4) "[o]n complaint in writing that any property described in such complaint is incorrectly assessed ***" do not apply to the situation which obtains in this case—there is nothing for the phrase to operate on because the property has not been assessed at all. As the appellants' brief says, "[t]hat statutory provision was meant to correct the wrong number and not to supply a number." Since there never has been an assessment of the property in question (due to the exemption granted it), the petitioners contend the situation is not covered by section 108(4). Thus, the petitioners contend, there is no administrative remedy available to them and therefore *mandamus* is the proper remedy. Petitioners cite the leading case of *People ex rel. Jones v. Webb* (1912), 256 Ill. 364, which held that *mandamus* was the proper remedy to compel the board of review to perform its duty to list and assess omitted property. In that case, a writ of *mandamus* was sought by a taxpayer to compel the board of review to list certain property for taxation which had not been assessed for the years 1907 through 1910. The defendants demurred to the pe-

tition and the trial court sustained the demurrer. Upon appeal to the supreme court, that court reversed the trial court and overruled the demurrer to the petition, saying:

> "If the allegations in this petition are true,—and for the purposes of the decision of the questions now before us they are admitted to be true,—we are at a loss to find any possible excuse for the refusal of appellees to proceed to an investigation and to determine whether the facts stated in the petition are true, and if they be found to be true, in whole or in part, to assess the persons named in the petition upon the fair cash value of their property." (256 Ill. 364, 377.)

This decision was reaffirmed in *People ex rel. Village of Park Forest v. Cullerton* (1958), 13 Ill. 2d 575, as to the use of *mandamus* against the taxing authorities.

The defendants point out that in the *Cullerton* case the court said:

> "We have held that *mandamus* is the proper remedy to enforce the performance of statutory duties with respect to the assessment and collection of taxes, where such omission has been specifically directed to the attention of the authorities and a demand for affirmative action has been ignored." (13 Ill. 2d 575, 580.)

From this statement the defendants argue that the supreme court found that the petitioners had exhausted their administrative remedies and by inference that the court had held that a petition for *mandamus* to compel the taxing authorities to list and assess deliberately omitted property would not be issued unless the petitioners had exhausted their administrative remedies. Moreover, they argue, based on this wording in the *Cullerton* opinion, and several other opinions where mention was made of previous attempts to compel the authorities to act, that the reference to such previous resort to the taxing bodies establishes that there *is* an administrative remedy which must be exhausted before *mandamus* can issue in such a case.

Neither *People ex rel. Jones v. Webb* nor *People ex rel. Village of Park Forest v. Cullerton* make any reference to the filing of a complaint with the board of review as suggested in section 108(4) of the Revenue Act (Ill. Rev. Stat. 1981, ch. 120, par. 589(4)). They merely relate that the petitioner had in the *Webb* case "informed the board of review, and each of the members thereof, of all the facts set forth in table A [a list of omitted property]" (*People ex rel. Jones v. Webb* (1912), 256 Ill. 364, 369), and in the *Cullerton* case, reference is merely made to "the failure of administrative efforts to bring about the back-taxing of a certain building." (*People ex rel. Village of Park*

*Forest v. Cullerton* (1958), 13 Ill. 2d 575, 576.) The defendants imply that the petitioners in the case at hand made no effort to pursue the matter with the taxing authorities, hence they were derelict in their efforts as compared with the petitioners in *Webb* and *Cullerton.* We note, however, that the petition for *mandamus* in the present case clearly states:

"Respondents, upon being requested by petitioners to assess, levy and extend taxes against the parcels set forth in Exhibit I, refused to do so for the alleged reason that said parcels were and are exempt from the special service tax assessed and levied against properties in Elgin Special Service Area No. Two ***."

By their motion to dismiss the petition, the defendants have admitted the allegations above set forth, that is, that the petitioners set out the properties which had been omitted and requested the defendants to assess them and that the defendants refused to list and assess said property because, they alleged, it was exempt property. It is clear that if the allegation that the defendants claimed the property was exempt and therefore not subject to assessment is to be taken as true, then no administrative remedy is possible, since the belief by the taxing authority that the property is exempt would preclude it from listing it and assessing it for taxation. The defendants have therefore posed a question of law, having refused to assess on legal grounds and that being so, it would appear that any further administrative remedy would clearly be useless, even if there was an administrative remedy in such case.

■ We conclude, therefore, that (1) there is no clear administrative remedy to compel the board of review to list and assess *deliberately omitted* property and (2) in this case, since the taxing authorities—presumably including the named defendants, members of the board of review—assert that the property in question is exempt and hence not taxable property—it would be a clearly useless act on the part of the petitioners to file a complaint with the board of review or the county clerk or the supervisor of assessments in which they would complain of the failure of those authorities to assess the property in question. We conclude, therefore, that the dismissal of the petition for *mandamus* on the ground of failure to exhaust administrative remedies was in error.

■ However, the judgment of the trial court can be affirmed on review if found to be correct on other grounds, even if the ground assigned for the court's decision is erroneous. (*Shaw v. Lorenz* (1969), 42 Ill. 2d 246; *White Fence Farm, Inc. v. Land & Lakes Co.* (1981), 99 Ill. App. 3d 234; *Sandberg v. American Machining Co.* (1975), 31

Ill. App. 3d 449.) The petitioners here seek a writ of *mandamus* to compel the taxing authorities to act contrary to the legal position they have allegedly taken. In such a situation, the relator must show a clear legal right to have the action taken which he is demanding. In *People ex rel. Heydenreich v. Lyons* (1940), 374 Ill. 557, 567-68, in declining to issue a writ of *mandamus* against the relief officer of the city of Chicago on the ground that the clear legal rights of the petitioner as a matter of law had not been established, the court said:

"The question before us is one of law only, and not of fact. Even though one or more relators may be entitled to be placed on the relief roll of the city of Chicago, the prayer of the petition cannot be granted because they do not here claim to be entitled to the benefits of the statute assailed. The writ of *mandamus* is a summary writ issued from a court of competent jurisdiction commanding the officer or officers to whom it is addressed to perform some public duty which the relator is entitled of right to have performed and which the party owing the duty has failed to perform. One who petitions for the writ must show that he has a clear right to the relief which is demanded. [Citation.] This, the relators' petition for the writ of *mandamus* failed to do."

In the case here under consideration, if the duty of the defendants to do the act requested is not clear as a matter of law, the writ should not issue, as indicated in *People ex rel. Heydenreich v. Lyons* and *People ex rel. County of Cook v. Nelson* (1932), 349 Ill. 193. In speaking of the writ of *mandamus*, 52 Am. Jur. 2d *Mandamus* sec. 64 (1970) says:

"*** To warrant the issuance of the writ, not only must there be a legal right in the relator, but, owing to the extraordinary and drastic character of mandamus and the caution exercised by the courts in awarding it, it is also important that the right sought to be enforced be clear and certain. There must be an immediate right to have the act in question performed, and such right must be specific, well defined, and complete, so as not to admit of any reasonable controversy. ***."

In the case before the court, the right to have the writ issued may not be clear and evident, even granting that the exhaustion of administrative remedies by filing a complaint with the board of review should not be required. The petitioners' position is based on several old Illinois cases, one confirmed by the United States Supreme Court, which seem to indicate that a general statute exempting certain religious, charitable or municipal property from "taxation" does not dis-

pense such property from the burden of a special assessment or the assessment imposed by special taxation of contiguous property within an established special taxing district such as Elgin Special Service Area No. 2.

The case most often referred to on the question of exemptions of property from a special taxing district is *Illinois Central R.R. Co. v. City of Decatur* (1888), 126 Ill. 92, 96. In that case, the railroad had obtained a special charter from the legislature at the time the railroad was incorporated, exempting the railroad from taxation in the following language: " 'the said lands and lots shall be *exempt from taxation of every description,* by and under the laws of this state, until after the same shall have been sold and conveyed by the said trustees as aforesaid.' " The city of Decatur enacted an ordinance for the paving of a certain street abutting the railroad and the railroad was assessed a portion of the cost of said improvement. The railroad objected to the assessment, contending that its charter exempted it from all taxation of any kind, including the tax imposed for the street improvement. The county court rejected the contention and held that the railroad was subject to the special tax in question. Upon appeal, the Illinois Supreme Court affirmed the trial court, saying:

> "It has many times been held by this court 'that exemption from taxation does not exempt from special assessments.' [Citation.] Therefore, if the improvement in the present case had been made by special assessment, appellant's property would not be relieved, by the exemption of its charter, from its just proportion of the burden of such assessment. Is there any such difference between *special assessment* and *special taxation of contiguous property,* as those terms are used in section 9 of article 9 of our constitution, that the general word *taxation* should be held to include the latter and not the former? It is the settled doctrine of this Court, that special assessments are not included within the meaning of the word *taxation.* The question presented for our consideration is whether the same doctrine should also be applied to *special taxation of contiguous property."* 126 Ill. 92, 95-96.

The court then went on to decide, on the basis of past cases, that special taxation of contiguous property is in the same category as special assessments in not being exempt from ordinary taxation.

This case was appealed to the Supreme Court of the United States and that court in *Illinois Central R.R. Co. v. City of Decatur* (1893), 147 U.S. 190, 37 L. Ed. 132, 13 S. Ct. 293, affirmed the judgment of the Illinois Supreme Court, making no distinction on this

point as between a special assessment and special taxation of contiguous property and held that as to that point there was no difference between the Illinois constitutions of 1848 and 1870.

It seems clear, based on these cases and other more recent cases such as *City of Waukegan v. Drobnick* (1964), 31 Ill. 2d 580, that special assessments and special taxation are not considered "revenue" in the same sense as revenue under the Revenue Act. Thus, it appears that the dispensation from "taxation" of religious, governmental and charitable properties set out in the Revenue Act of 1939 (Ill. Rev. Stat. 1981, ch. 120, pars. 500.2, 500.6 and 500.7) does not necessarily exempt those same properties from a special service area tax for improvements. This, however, is not the same as saying that a local government having home rule powers may not exempt such property from its special service area on grounds of public policy, as does the State. In *Ciacco v. City of Elgin* (1980), 85 Ill. App. 3d 507, 516-17, we said:

"While we agree with the plaintiffs that the State exemption from general taxes for the religious and charitable institutions in question did not dispense them from the special service area tax, we think the neglect of the city taxing authorities to levy on these institutions would not have the effect of rendering the special service area ordinances invalid."

We did not, however, decide the question whether the exemption, if contained in the ordinance—which it was not—would render the ordinance invalid, saying:

"In any event, however, we do not consider this contention in this appeal for the reason that it was not alleged in the complaint nor in the plaintiffs' brief that such exemptions constituted a denial of equal protection and due process." 85 Ill. App. 3d 507, 517.

Nor is the court asked in the present case to declare the Elgin Special Service Area ordinances invalid, whether for denial of due process or for any other reason. On the contrary, this court is requested to *uphold* the ordinances by interpreting them as imposing a tax on the property which the city council has interpreted as being exempt from such tax and to require the taxing authorities to impose the special service area tax on these properties, heretofore treated as exempt. The ordinances complained of were adopted in 1977, 1978, 1979 and 1980. They were to levy and assess taxes for special services in Elgin Special Service Area No. 2 for each of the years mentioned. Those tax levy ordinances did not specifically provide for any exemptions. However, the ordinances for 1977 and 1978 provided in

part:

"Section 3. That the full sums be and the same are hereby levied upon all taxable property as defined in the Revenue Act of 1939 in the City of Elgin Special Service Area Number Two ***."

The tax levy ordinances adopted in 1978 and 1979 provided in part:

"Section 2. That there be and there is hereby levied upon all taxable property within the City of Elgin Service Area Number Two, subject to taxation for the year _____ ***."

Both ordinances go on to recite that tax levied is pursuant to certain sections of the Illinois Constitution and Public Act 78—901, which is entitled "An Act to provide the manner of levying or imposing taxes for the provision of special services to areas within the boundaries of home rule units and non-home rule municipalities and counties." This enabling statute (Ill. Rev. Stat. 1977, ch. 120, par. 1301 *et seq.*) provides that a tax to provide special services is to be levied and imposed in accordance with the Revenue Act of 1939. It provides as follows:

"Sec. 10. If a property tax is levied the tax shall be extended *** in the manner provided by the Revenue Act of 1939 based on assessed values as established pursuant to the Revenue Act of 1939. ***." Ill. Rev. Stat. 1977, ch. 120, par. 1310.

The Revenue Act of 1939 sets forth certain types of property which are exempt from taxation. (Ill. Rev. Stat. 1977, ch. 120, pars. 500.1 through par. 500.23.) Thus, that act exempts among other property that which is used for churches (par. 500.2), property of political subdivision such as a city (par. 500.6), public grounds owned by political subdivision (par. 500.9), and property of charitable institutions such as the Y.W.C.A. here involved (par. 500.7).

Thus, while the tax levy ordinances here involved did not specifically provide for any exemptions, the compliance with the enabling statute results effectively in exemption of those properties exempt under the Revenue Act of 1939.

The petition does allege a due process violation if the ordinance is not implemented by *mandamus* as it requests, since if the exemption continues the petitioners will pay a disproportionate amount of the levy and will therefore not enjoy the equal protection of the law.

■ However, not all questions of due process or equal protection of the laws can be resolved by a writ of *mandamus*, for these questions often involve matters of judgment and discretion, not matters which are clear and evident, as is necessary where a writ of *manda-*

*mus* is issued. In the present case, the question is whether it is clear and evident that the city of Elgin does not have the authority under its home rule powers to exempt within a special service area the kinds of property the State exempts from taxation under its general revenue laws. That this proposition would have been answered in the negative previous to the enactment of the home rule provisions of the 1970 Constitution seems likely from a reading of the older cases such as *Illinois Central R.R. Co. v. City of Decatur* and, in the case of special assessments, under the 1964 decision in *City of Waukegan v. Drobnick*. That, however, does not settle the question for we are now dealing with the home rule provisions of the 1970 Constitution which give much broader powers to local governments than under the previous constitution. Moreover, the home rule provisions of article VII of the 1970 Constitution are further implemented by the enabling legislation contained in section 1 *et seq.* of "An Act to provide the manner of levying or imposing taxes for the provision of special services to areas ***" (Ill. Rev. Stat. 1981, ch. 120, par. 1301 *et seq.*). Whereas the provisions of the 1870 Constitution gave the taxing powers of local governments very limited scope, granting only such taxing authority as was delegated to them by the General Assembly, the 1970 Constitution under its home rule provisions is much broader as to taxing authority of local governments. The 1870 Constitution provided that:

> "The general assembly may vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessment, or by special taxation of contiguous property, or otherwise. ***." (Ill. Const. 1870, art. IX, sec. 9.)

However, under the home rule provisions of the 1970 Constitution, a home rule unit (such as the city of Elgin) may "exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power *** to tax; ***." Ill. Const. 1970, art. VII, sec. 6(a).

It is further provided in the 1970 Constitution:

> "The General Assembly may not deny or limit the power of home rule units (1) to make local improvements by special assessment *** (2) to levy or impose additional taxes upon areas within their boundaries in the manner provided by law for the provision of special services to those areas and for the payment of debt incurred in order to provide those special services." Ill. Const. 1970, art. VII, sec. 6(*1*).

Pursuant to the latter paragraph, enabling legislation was enacted

(Ill. Rev. Stat. 1981, ch. 120, par. 1301 *et seq.*). This legislation nowhere contains any prohibition against granting an exemption for charitable, religious and municipally owned property within the special service area. Moreover, the 1970 Constitution, article VII, section 6(m), states: "Powers and functions of home rule units shall be construed liberally." Combining the mandate for liberal interpretation with the wording of article VII, section 6(1) stating that the General Assembly "may not deny or *limit* the power of home rule units * * * (2) to levy or impose additional taxes upon areas within their boundaries in the manner provided by law for the provision of special services in those areas and for the payment of debt incurred in order to provide those special services" (emphasis added), it seems to us that local governments have considerable discretion under the 1970 Constitution and the subsequent enabling legislation as to the manner in which they shall provide for taxes in special service areas. Construing the various provisions liberally, we feel it is far from clear that the municipal authorities could not legally exempt the traditionally exempt properties within their special service area, as does the State itself. The city council is the governing body (by statute) of the special service area, and its decisions to exempt the properties in question could reasonably be interpreted by the assessor and the board of review as being within the city's discretion. As we noted, it is not as if the *taxpayer* was *claiming* an exemption—the question is whether the exemption is so clearly unlawful and outside the authority of the city to grant that the taxing authority should be compelled by the courts to reverse it and to assess the property against the city's wishes and, indeed, contrary to the expectations of the residents of the district who relied on the city's promises and did not vote against the creation of the district, believing they were exempt.

We conclude there is sufficient leeway in the home rule legislation treating of the taxing power of municipalities, and especially that dealing with special tax districts, to hold that the writ of *mandamus* should not issue in this case.

We therefore affirm the trial court's judgment, although for different reasons than the court expressed. The judgment of the circuit court of Kane County is affirmed.

Judgment affirmed.

HOPF and VAN DEUSEN, JJ., concur.