ISSA SWEIS *et al.*, Plaintiffs-Appellants, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (4th Division)   No. 84—2485

Opinion filed April 3, 1986.

644

Terrance A. Norton, of Chicago, for appellants.

James D. Montgomery, Corporation Counsel, of Chicago (Mary K. Rochford, John T. Maher, and Robert L. Janega, Assistant Corporation Counsel, of counsel), for appellees.

PRESIDING JUSTICE LINN delivered the opinion of the court:

This is an appeal from the dismissal of plaintiffs' complaint attacking the validity of a city ordinance creating a special service tax area and three subsequent tax levy ordinances enacted to fund the operation of a public parking facility.

Plaintiffs are citizens residing within the boundaries of the special service area complained of in this case. Plaintiffs' seven-count complaint was dismissed by the trial court for failing to state a cause of action. This complaint sought the following relief: (1) declaratory judgment as to the validity of the ordinances in question; (2) an injunction against the execution of the ordinances; (3) a writ of *mandamus* compelling a recount of electors objecting to creation of the area; (4) a refund of all taxes paid as a result of taxes paid as a result of the levies for the area; and (5) damages and attorney fees.

On appeal, plaintiffs contend that the trial court erred by dismissing their complaint in that they are entitled to: (1) declaratory judgment that the ordinances are invalid because the special service area was created in violation of the special services act (Ill. Rev. Stat. 1981, ch. 120, par. 1301 *et seq.*), and that all tax levies for the area are therefore invalid; (2) an injunction against the levying, collection, and disbursements of taxes for the area because there exists no adequate remedy at law; (3) a writ of *mandamus* compelling a recount of the number of electors eligible to challenge the ordinances because they have a clear legal right to this extraordinary writ; (4) a refund of all taxes paid to fund the special service area because they followed their available remedies; and (5) an award of money damages and attorney fees.

We affirm the decision of the trial court dismissing plaintiffs' complaint.

BACKGROUND

On June 28, 1982, pursuant to public notice, the committee on finance (finance committee) of the city council of the city of Chicago (city council) conducted a public hearing in order to consider the creation of "City of Chicago Special Service Area No. 2" (Area). This Area was to be a differential taxing district centered in the vicinity of the intersection of Belmont and Central avenues in Chicago. The purpose of the Area was to levy additional taxes on the property owners within its boundaries to fund the operation, maintenance, and upkeep of a public parking facility (garage) located at 3140 North Central Avenue. The city-built garage was leased by the city to the Belmont-Central chamber of commerce (chamber of commerce), which enlisted voluntary contributions from Area merchants in order to provide free parking at the garage. The chamber of commerce petitioned the finance committee to establish the Area because it was unable to enlist the necessary voluntary contributions from Area merchants in order to insure continued free parking at the garage. At the time of the public meeting, plaintiffs, residents of the proposed Area, objected to the establishment of the Area.

On June 30, 1982, the city council adopted an ordinance establishing the Area "to provide special services to that area in addition to the services [already] provided [to that Area] by the City generally." The ordinance also established the Belmont-Central parking commission (commission), giving the commission the power to recommend to the city council annual budgets and tax levies to fund the garage, and to generally supervise and regulate the operation of the garage.

After objecting to the creation of the Area at the public hearing, and pursuant to section 9 of the special services act (Ill. Rev. Stat. 1981, ch. 120, par. 1309), plaintiffs began to solicit signatures from electors and record owners of land residing in the Area in an effort to challenge the law. On August 27, 1982, plaintiffs filed with the clerk of the city of Chicago (city clerk) 60 sheets of signatures of persons claiming to be either record owners of property located in the newly created Area, or electors residing therein. Plaintiffs claim that these petitions successfully abolished the Area and the tax because they contained signatures of at least 51% of the record owners *and* 51% of the electors referred to above, as is required to successfully veto the tax under the provisions of the special services act (Ill. Rev. Stat. 1981, ch. 120, par. 1309).

On September 17, 1982, despite plaintiffs' claim that the Area was abolished, the city council levied an *ad valorem* tax for the year 1983 on all taxable real property in the Area. This original levy was

amended on March 25, 1983, levying the property taxes for the year 1982, making them collectible in 1983. This amendatory ordinance also added four parcels of land to the Area.

After considerable review by the corporation counsel of the city of Chicago of the boundaries of the Area and the names of the signatures appearing on plaintiffs' petition to abolish the tax, the city determined that plaintiffs failed to obtain the requisite number of signatures to successfully challenge the ordinances in question. Plaintiffs were informed of the city's decision by a letter from the corporation counsel to one of the plaintiffs, Harry Mazzoni. Although the letter stated that it was the city's final position on the matter, city attorneys continued to discuss with plaintiffs their complaints regarding the city's conclusion. By letter dated August 22, 1983, plaintiffs were advised that the city stood by its decision delineated in the June 14, 1983, letter to Harry Mazzoni. A subsequent tax levy for the 1983 tax year in the amount of $61,568 was unanimously approved by the city council on September 15, 1983.

On June 29, 1984, two years after creation of the Area, and one year after disbursement of the funds began, plaintiff Mazzoni and two others filed this action, purporting to represent a class of persons similarly situated. The city filed à motion to dismiss plaintiffs' complaint which was granted by the trial court on September 14, 1984. This appeal followed.

OPINION

Before addressing the merits of this case, we briefly discuss the city's authority to levy differential taxes through the creation of the Area:

The authority for establishing the Area is firmly grounded in our State Constitution, which allows home rule units, counties, and municipalities to levy additional taxes upon areas within their boundaries. These taxes are used to provide those areas with special services not provided to other areas situated within the boundaries of the particular home rule unit, county, or municipality. (See generally, Ill. Const. 1970, art. VII, secs. 6(l), 7.) These provisions, however, are not self executing and must be enacted through "enabling legislation" adopted for this purpose by our General Assembly. See *Oak Park Savings & Loan Association v. Village of Oak Park* (1973), 54 Ill. 2d 200, 296 N.E.2d 344.

. The enabling legislation particular to this case is the special services act (Ill. Rev. Stat. 1981, ch. 120, par. 1301 *et seq.*) This act defines "special service area" and prescribes the procedures to be fol-

lowed in establishing such areas, including provisions for public notice of and hearings related to the creation of these areas, as well as the methods to be followed in order to object to the tax. In addition, our supreme court has held that a special service tax created pursuant to the act delineated above is presumptively valid:

"An ordinance adopted by a local unit of government, which purports to exercise a power vested in that local unit of government by our constitution (and statutes, if applicable), is presumptively valid. [Citation.] *** [P]laintiff ha[s] the burden of pleading facts which, if proved, would have established that the tax was unauthorized, unconstitutional, or otherwise invalid. [Citation.]" (*Coryn v. City of Moline* (1978), 71 Ill. 2d 194, 199, 374 N.E.2d 211.)

This being the case, plaintiffs must bear the burden of proving that the ordinances creating the Area and levying the taxes therefor are invalid. *Coryn v. City of Moline* (1978), 71 Ill. 2d 194, 198, 374 N.E.2d 211.

Based on the above discussion, the issue in this case becomes whether the trial court was justified in dismissing plaintiffs' complaint challenging the propriety of the Area and the subsequent tax levy ordinances. In order to do this, we must first examine whether plaintiffs were entitled to declaratory judgment that the tax was invalid, as this is the threshold question upon which all of the relief they seek is premised.

I

Plaintiffs first contend that the trial court erred by dismissing the four counts in their complaint seeking declaratory judgment that the tax was *per se* invalid. Plaintiffs posit that they were entitled to declaratory relief because the Area was never legally established, and therefore all tax levies were void *ab initio*. We, however, agree with the city's position that plaintiffs have failed to meet their burden to show that they were entitled to the relief they seek in that they failed to sufficiently allege facts showing that: (1) the city did not substantially comply with the procedural requirements of the enabling legislation in establishing the special service area in this case; (2) plaintiffs successfully abolished the Area pursuant to section 9 of the special services act (Ill. Rev. Stat. 1981, ch. 120, par. 1309); and (3) the boundaries of the Area were drawn in an arbitrary and capricious manner.

■ As a preliminary matter we note that the city moved to dismiss plaintiffs' complaint pursuant to sections 2—615 and 2—619 of

the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, pars. 2—615, 2—619). It is basic that a motion to dismiss admits all facts well pleaded together with all reasonable inferences therefrom, but does not admit conclusions of law or conclusions of fact unsupported by allegations of specific facts upon which these conclusions rest. (*Mlade v. Finley* (1983), 112 Ill. App. 3d 914, 445 N.E.2d 1240.) Since the city did not answer plaintiffs' complaint in this case, the trial court was compelled to view as true all well-pleaded ultimate facts in plaintiffs' complaint. *Acorn Auto Driving School, Inc. v. Board of Education* (1963), 27 Ill. 2d 93, 187 N.E.2d 722.

> "To pass muster a complaint must state a cause of action in two ways. First, it must be legally sufficient; it must set forth a legally recognized claim as its avenue of recovery. When it fails to do this, there is no recourse at law for the injury alleged, and the complaint must be dismissed. [Citations.] Second and unlike Federal practice, the complaint must be factually sufficient; it must plead facts which bring the claim within the legally recognized cause of action alleged. If it does not, the complaint must be dismissed." (*People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 308.)

Applying these principles, the court below dismissed plaintiffs' complaint, and plaintiffs apparently did not request leave to amend. Consequently, plaintiffs' cause of action stands or falls based on the sufficiency of their complaint (see *Mlade v. Finley* (1983), 112 Ill. App. 3d 914, 445 N.E.2d 1240) which we review below:

## A

■ In arguing that the city failed to comply with the enabling legislation, plaintiffs first contend that they were misled in their efforts to veto the tax because no map of the proposed special service area was filed with the city clerk and the county clerk, depriving them of proper notice as to the boundaries of the proposed area.

In *Ciacco v. City of Elgin* (1980), 85 Ill. App. 3d 507, 407 N.E.2d 108, a citizen sought an injunction against the city of Elgin to restrain the city from proceeding with the establishment of a special service tax area designated as "Elgin Special Service Area," as well as the spending of tax revenues pursuant to this ordinance. Plaintiff-citizen complained, as plaintiffs do in this case, that the ordinance was void for failure to comply with the enabling legislation authorizing creation of the area. (Ill. Rev. Stat. 1981, ch. 120, par. 1301 *et seq.*) There plaintiff alleged certain defects in the creation of the ordinance including: "(a) That proper notice of the hearing on the ordinance was not

given; (b) that the boundaries of the area were not designated by a proper and correct legal description; (c) that the city clerk did not file a certified copy of the ordinance with the county clerk within the time required by law and moreover failed to file an accurate map of the area with the county clerk ***." (*Ciacco v. City of Elgin* (1980), 85 Ill. App. 3d 507, 510, 407 N.E.2d 108, 110-11.) In reaching its decision, the second district appellate court found that the procedural errors alleged above did not invalidate the ordinance establishing the area since these informalities did not affect the substantial justice of the levy and therefore did not invalidate the ordinance. 85 Ill. App. 3d 507, 513, 407 N.E.2d 108.

The facts and circumstances of the instant case make it difficult for us to seriously consider plaintiffs' allegations of lack of notice as to the boundaries of the Area. The exhibits attached by plaintiffs to their complaint indicate that they did indeed have adequate notice of the area affected by the establishment of the Area. These exhibits disclose that the city council provided in the ordinance creating the Area; (1) a map of the proposed Area; (2) a list of legal descriptions of land affected by the tax; and (3) a list of permanent index (tax) numbers of properties within the Area. Insofar as these supporting exhibits contradicted plaintiffs' complaint, we find them to be the controlling factual basis upon which the complaint is predicated in this case. (See *Stap v. Chicago Aces Tennis Team, Inc.* (1978), 63 Ill. App. 3d 23, 27, 379 N.E.2d 1298, 1301.) In addition, plaintiffs admit that a 5 foot by 3½ foot map of the Area was on display at the public hearing to discuss the creation of the Area held on June 28, 1982.

Furthermore, the enabling legislation does not require the city to file a copy of the map with the city clerk for plaintiffs' inspection and use in soliciting objections to the establishment of the Area. Rather, the procedural requirements of the enabling act require only that an accurate map of the Area be filed with the county clerk at the time of the first tax levy. (Ill. Rev. Stat. 1981, ch. 120, par. 1310.) The exhibits attached to the city's motion to dismiss disclose that a copy of the map certified by the city clerk was filed with the county clerk on September 28, 1982. Although this is concededly seven days later than the statutory requirement (Ill. Rev. Stat. 1981, ch. 120, par. 1310), we do not view this procedural informality as affecting the substantial justice of the levy and therefore it does not invalidate the ordinance. See *Ciacco v. City of Elgin* (1980), 85 Ill. App. 3d 507, 407 N.E.2d 108.

Changing our focus to the allegations stated in plaintiffs' complaint, we are inclined to agree with the city's position that plaintiffs

have failed to plead facts which could, if proven, show that the city failed to substantially comply with the procedural requirements of the enabling legislation. We believe that the facts stated in plaintiffs' complaint are not substantial enough to have prevented them from determining the proper boundaries of the Area, or that any persons entitled to notice were prevented by the city's alleged actions or inactions from receiving it.

■ Plaintiffs also argue in their brief that the March 25, 1983, amendment to the original tax levy ordinance violated the enabling act because it retroactively assessed a 1982 levy for the Area in 1983. Plaintiffs state that, while the city did file the tax levy ordinance of September 17, 1982, on September 28, 1982, the levy for collection of taxes in 1982 was not passed until the amendment was authorized on March 25, 1983, five months after the statutory deadline requiring corporate authorities to "file a certified copy of each ordinance levying taxes in the special service area on or before the third Tuesday of September of each year ***." (Ill. Rev. Stat. 1981, ch. 120, par. 1310.) Moreover, plaintiffs claim that the city's failure to timely file the 1982 levy constitutes "part of the continuing course of conduct by the City which forced Plaintiffs to pay [the special service tax]."

Section 10 of the enabling act (Ill. Rev. Stat. 1981, ch. 120, par. 1310) requires that tax levies for special services shall be administered in accordance with the Revenue Act of 1939 (Ill. Rev. Stat. 1981, ch. 120, par. 482 *et seq.*). However, plaintiffs' allegations fail to allege any specific violations of the provisions of the Revenue Act of 1939. More importantly, plaintiffs have failed to allege specific facts showing that the amendment affected the substantial justice of the creation of the Area, or that the amendment did not substantially comply with the requirements of the enabling act itself.

Accordingly, we find that the city has substantially complied with the provisions of the enabling ordinance, and we are precluded as a matter of law from holding that the trial court erred in dismissing plaintiffs' complaint.

B

■ Plaintiffs further contend that the ordinance establishing the Area has been successfully abolished, and that the subsequent tax levies to fund the Area are therefore illegal. Plaintiffs base these contentions on their belief that 51% of the owners of record of land and 51% of the electors residing within the boundaries of the Area signed a petition objecting to creation of the Area. Section 9 of the enabling act provides as follows:

"If a petition signed by at least 51% of the electors residing within the special service area and by at least 51% of the owners of record of the land included within the boundaries of the special service area is filed within the municipal clerk or county clerk, as the case may be, within 60 days following the final adjournment of the public hearing objecting to the creation of the special service district, the enlargement thereof, the levy or imposition of a tax or the issuance of bonds for the provision of special services to the area, or to a proposed increase in the tax rate, no such district may be created, enlarged, or tax may be levied or imposed nor the rate increased, or no such bonds may be issued. The subject matter of said petition shall not be proposed relative to any signatories of said petition within the next two years." Ill. Rev. Stat. 1981, ch. 120, par. 1309.

There is no dispute in this case that the petition in opposition to the establishment of the Area was timely filed by plaintiffs with the city clerk. What is disputed in the parties' briefs is whether this petition actually contained the requisite percentage of signatures needed to abolish the tax.

At various points in their complaint, plaintiffs allege that the city erroneously included on the roster of persons living in the Area the names of eight individuals who were neither registered voters (electors) nor record owners of land in the Area at the time of the public hearing. According to plaintiffs' argument, inclusion of these eight electors broadened the base of all eligible electors such that it appeared as if plaintiffs had failed to solicit the requisite 51% of electors on their petition needed to veto the ordinances. Plaintiffs' complaint, however, does not allege sufficient facts from which we can conclude that these eight electors were improperly included in the final tally of electors.

Although plaintiffs' complaint concludes that the electors in question were improperly included in the final tally of eligible electors, plaintiffs have failed to factually support these allegations of ineligibility. Plaintiffs have attached to their complaint the affidavits of persons they allege to be the managers and owners of the properties where the electors in question purportedly resided. These affidavits are the factual basis for plaintiffs' contention that the persons named therein did not reside in the Area at the time of the public meeting and the ordinance's passage. Under plaintiffs' interpretation of the facts, and according to plaintiffs' exhibit No. 25 attached to the complaint, when these eight electors are subtracted from the total number of eligible electors, the adjusted total number of eligible electors becomes

48, rather than the previously unadjusted total of 56 relied upon by the city. Since plaintiffs contend that their petition challenging the ordinance contained 25 signatures, then according to plaintiffs, 52.08% of the eligible electors signed the petition, successfully abolishing the tax.[1]

Our review of the affidavits relied upon by plaintiffs renders a different result. Affidavits opposing a motion to dismiss must be brought in accordance with Supreme Court Rule 191 (87 Ill. 2d R. 191). Pursuant to this rule, affidavits "shall be made on the personal knowledge of the affiants; ***." In the case before us, two of the affidavits are signed by affiants who do not profess to have personal knowledge of the matters attested to, *to wit*: they do not claim to be owners or managers of the properties in question, nor do they state any other basis for knowing that the individuals named in their affidavits were not residents of the Area at the relevant time. Pursuant to Rule 191, these affidavits containing three of the eight names subtracted by plaintiffs are defective. Consequently, when we add back the three electors referred to above, we arrive at a "readjusted" total of 51 electors. This means that only 49.02% of the eligible electors signed plaintiffs' petition, such that plaintiffs have failed as a matter of law to plead sufficient facts which could, if proven, show that they abolished the tax.[2]

Consequently, plaintiffs' complaint is insufficient on its face, and plaintiffs cannot now be heard to complain that the tally of electors objecting to the Area was incorrect.

## C

■ Count IV of plaintiffs' complaint seeks a declaratory judgment that the tax is invalid because the boundaries of the Area were drawn in an arbitrary and capricious manner, violative of the equal protection clauses of article I, section 2 of the Illinois Constitution (Ill. Const. 1970, art. I, sec. 2), and the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV.) This argument is not pursued in plaintiffs' brief. However, we choose to address plaintiffs' conclusory allegations to this effect for the purpose of iterating the well established rule that equal protection and due process require only that the city provide a rational basis for the differential

---

[1] Plaintiffs' percentage is reached by dividing the number of signatures on the petition (25) by the adjusted total of eligible electors (48), which equals .52083.

[2] This percentage is reached by dividing the number of signatures on the petition (25) by the "readjusted" total of eligible electors (48 + 3 = (51)), which equals .49019.

taxation of an area for a given special service. See *Coryn v. City of Moline* (1978), 71 Ill. 2d 194, 374 N.E.2d 211.

In the case before us, the properties included within the boundaries of the Area are all proximate to the Belmont-Central shopping district which the Area is designed to benefit. Thus, even if plaintiffs' complaint had alleged sufficient facts that the boundaries of the Area were drawn in an arbitrary and capricious manner, which it did not, a rational basis exists for the boundaries of the Area as drawn by the city in this case. Consequently, no due process violation has been properly pleaded, nor has such a violation occurred.

## II

■ We noted above that plaintiffs' challenge to the Area and the subsequent tax levies is centered around alleged failures of the city to comply with the enabling legislation, *viz*: (1) failure to file a map of the Area with the county clerk; (2) failure to file the 1982 levy ordinance by the third Tuesday in November; (3) that the citizen-electors and record owners of land residing in the Area successfully abolished the tax; and (4) that the boundaries of the Area were determined in an arbitrary and capricious manner. These allegations go to the validity of the Area and the subsequent tax levies and form the foundation for all of the relief sought by plaintiffs. However, we have shown above that plaintiffs have failed to allege sufficient facts which could, if proved, support plaintiffs' contentions that the ordinances are unauthorized or otherwise invalid or illegal. Accordingly, it stands to reason that the trial court was justified in dismissing plaintiffs' complaint in this case.

In view of the above, it is unnecessary for us to address plaintiffs' remaining arguments requesting relief by way of: (1) injunction; (2) writ of *mandamus*; (3) tax refund; and (4) an award of money damages and attorney fees. These contentions will have no bearing on the outcome of this case since plaintiffs have failed to sufficiently allege that they have been wronged in the first place.

Finally, we note that we have yet to discuss the city's contentions that: (1) there is no proper appellant before this court; and (2) that plaintiffs' complaint is barred by *laches*. We have purposely reserved these issues until now in order to address the merits of plaintiffs' arguments. Having done so, and having found that plaintiffs' complaint was properly dismissed, it is not necessary for us to consider the city's contentions, as they too will have no effect on the outcome of this case.

Consequently, based upon all of the facts and circumstances dis-

cussed above, we affirm the decision of the trial court dismissing plaintiffs' complaint.

Affirmed.

JIGANTI and JOHNSON, JJ., concur.